Day, J.
 

 This case comes before this court upon a petition in error to reverse the findings of the Public Utilities Commission in denying a certificate of convenience and necessity for an extension of certificate No. 1461, heretofore granted plaintiff in error, by which extension it is sought to operate between Deerfield, Portage county, Ohio, and Alliance, Stark county, Ohio.
 

 
 *384
 
 Plaintiff in error is a duly organized corporation, and the owner of certificate of public convenience and necessity No. 1461, as above noted, and by virtue thereof operates a bus line over a route from Warren, Trumbull county, Ohio, to Salem, Columbiana county, Ohio, passing through Lordstown, Jackson Center, and Ellsworth. After the issuing of the original certificate, an extension was granted by the Public Utilities Commission giving the plaintiff in error the right to operate westwardly from Ellsworth, Mahoning county, to the village of Deerfield, Portage county, Ohio. The route covered by the extension prayed for, starting from Deerfield, runs west 2% miles to the intersection of state road No. 80, and south from that point 8% miles to the city of Alliance. The route is entirely over an improved road, and it is conceded that the plaintiff in error is able financially to furnish the necessary equipment to cover the extension and to put on any additional equipment if the public convenience and necessity demand it.
 

 Subsequent to the filing of the application for the extension, a protest was filed by the Youngstown Suburban Transit Company, operating a line southwesterly from Youngstown, Mahoning county, Ohio, through Canfield, G-reenford, New Albany, to Salem, and thence westwardly through Damascus, Beloit and Sebring, to Alliance, Ohio. This company is the only protestant.
 

 There are certain other transportation companies operating in the vicinity of the territory involved in this controversy. The Akron-Alliance Bus Company operates a line from Akron to Alliance, and, while the route of the Akron-Alliance
 
 *385
 
 Bus Company parallels the proposed extension at a distance of about a mile and a half westwardly from Atwater, through Limaville, into the suburbs of Alliance, this company is not affected appreciably by the proposed service, and is not a protestant. The Akron-Youngstown Bus Company, operating through Kent, Ravenna, Edinburgh, Palmira, Jackson Center, Austintown, into Youngstown, is at such distance that it is not more than incidentally affected, if at all, by the application involved. Its interests would probably be subserved rather than injured by the granting of the proposed extension, by the transportation of possible passengers for either Youngstown, Ravenna, Kent, or Akron, changing at the intersection of the two routes at Jackson Center. This company is therefore not a protestant.
 

 The Northern Ohio Traction Company, an interurban electric line, operating a line from Alliance northwardly to Ravenna, parallels the proposed route, but at such distance that it is not a protestant, although in the beginning a protest was filed which was afterward withdrawn. The New York Central Railroad operates a line largely devoted to freight service from Alliance northeastwardly through Deerfield, to the northeastern part of the state. This service is scarcely to be considered as competition in the passenger service, for its service is confined to one train a day each way, leaving Deerfield for Alliance at 9 a. m. and returning at 4 p. m. It is not regarded by any of the interested parties as affected by the proposed application. This company is therefore not a protestant.
 

 
 *386
 
 The Pennsylvania Company operates' one of its through lines from Pittsburgh to Cleveland, through Alliance northwardly, passing through At-water at a distance of about 8 or 10 miles west from Deerfield. Approaching the city of Alliance, the lines of the Pennsylvania Railroad and the proposed bus route come nearer together, but the nature o.f the service offered by the two companies is so different in character, and the competition involved is so negligible in quantity, that no protest is filed by the Pennsylvania Company. So that the controversy may be reduced to a consideration of' the public needs as between the Youngstown Suburban Transit Company and the plaintiff in error.
 

 The plaintiff in error called five witnesses in support of its application for the extension, whose testimony related in substance to the distance from Deerfield to Alliance, by way of Salem, as compared with the more direct route over the proposed extension; the increase in population along the proposed route and economic conditions prevailing at Deerfield; the effect upon the transportation of pupils to and from school and also those attending Mt. Union College and other educational institutions in Alliance; the desirability of access to a larger market; the opportunities for industrial employment offered by better transportation facilities; the present inadequacy of transportation by railroad or otherwise. On behalf of the protestant, one witness testified, the substance thereof being a denial of the claims of the applicant.
 

 From an examination of the testimony it is apparent that the route covered by this extension
 
 *387
 
 at no place parallels or covers the territory served by the Youngstown
 
 &
 
 Suburban Company except between Salem and Alliance, lying approximately 5 miles south of the route of applicant. Would the granting of this extension injure the protestant by taking away passengers that it would ordinarily carry between Salem and Alliance, a distance of 14 miles, at a cost of 50 cents, and cause them to ride a distance of 31 miles, between Salem and Alliance, over the line of plaintiff in error at a cost of $1.25? The evidence shows that any one at Berlin Center desiring to go to Alliance under present conditions must take plaintiff in error’s bus line to Ellsworth, a distance of 5 miles; from Ellsworth to Salem, a distance of 10 miles; from Salem to Alliance, over protestant’s line, a distance of 14 miles; making a total distance traveled of 29 miles; when, if the proposed extension were granted, a passenger starting at Berlin Center could reach Alliance by traveling a distance of 15 miles, at a much lower cost. In other words, if the proposed extension is granted the prospective passenger would reach Alliance in point of mileage without having to travel the extra 14 miles covered by protestant.
 

 Does public convenience and necessity require that a person using the highways of this state as a means of travel shall be compelled to travel 14 miles in addition to his proposed journey in order to prevent any anticipated competition? This court, in
 
 McLain
 
 v.
 
 Public Utilities Commission,
 
 110 Ohio St., 1, 143 N. E., 381, syllabus 3, laid down the following rule:
 

 “In determining whether public convenience and
 
 *388
 
 necessity require such motor transportation service, the commission shall consider whether the public proposed to be served by such motor transportation company have or have not adequate common carrier transportation service independent of the service proposed to be rendered by the applicant, and whether the additional service pro-, posed to be rendered by the applicant will result in the public receiving more adequate or less adequate service.”
 

 Applying this rule, we think this record discloses by the preponderance of the evidence that not only public necessity, but the great convenience of the citizens of the state residing in Deerfield, Berlin Center, and the road along which the proposed extension will run into the city of Alliance, require that the application of plaintiff in error should be granted; that under present conditions adequate transportation facilities do not exist; that the only protestan! may suffer a slight competition in the 14 miles from Salem to Alliance, but that, in regard to its service into Youngstown, and its service from Alliance to its western terminus, Canton, Ohio, there is nothing in the record to show any competition whatsoever. Protestant’s lines do not reach the city of Warren. While it is suggested in argument that the proposed extension will result in the applicant receiving passengers who wish to travel from Alliance to Warren and return, who might make the same journey by way of Salem and Youngstown over protestant’s lines, such proposed passengers, however, after arrival at the city of Youngstown, would have to reach .Warren by other means of transportation, railroad,
 
 *389
 
 traction, or bus line, as the case may be, an additional distance of more than 15 miles over the service offered by protestant. This competition is so problematical that we do not feel that the denial of the proposed extension should be based upon that ground.
 

 The record discloses that upon previous occasions the Public Utilities Commission has had the question of this extension before it for consideration. While then the prayer for such extension was refused, we think that the change in industrial and economic conditions, the improvement of the highway upon, which the proposed extension is to operate, and the fact that under such previous applications the route was over a different highway, leading through Atwater into Alliance, justify a reconsideration of the case. The facts disclosed in the case at bar are so different from those in the case of the
 
 Columbus, Delaware & Marion Electric Co.
 
 v.
 
 Public Utilities Commission,
 
 116 Ohio St., 92, 155 N. E., 646, that we do not regard the same as controlling in the present instance.
 

 Taking into consideration the industrial activity at Alliance, the incidental attraction of its commercial advantages, Mount Union College, and other educational institutions, all of which draw from the territory served by the proposed extension and the route incident thereto, and the economic conditions existing at Deerfield, we are of opinion that the public signing the petitions for this service, not adequately served by existing transportation facilities, require that this extension be granted. Our conclusion, therefore, is that the finding of the Public Utilities Commission should
 
 *390
 
 be reversed, and this canse be remanded to the commission for further proceedings in accordance with the views expressed in this opinion.
 

 Judgment reversed.
 

 M ar.sttall, C. J., Allen, Kinkade and Jones, JJ., concur.