

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
XX~~XXXXXXXXXXXXXX~~
ATTORNEY GENERAL.

Hon. George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1332
Re: Appropriations--(1) Authority of Limitation
of Payments Board to re-allocate or trans-
fer specific items of appropriations; (2)
Numbering by Highway Department of salaried
employees not specifically itemized in the
Highway Department appropriation, but paid
from the general Highway fund; (3) Authority
of department heads to employ additional em-
ployees out of contingent appropriations,
and the necessity that such employee be
given a payroll number and the approval of
the Board set up by the Limitation of Pay-
ments clause be secured to such employment.

We have your letter of August 24, 1939, wherein
you ask the opinion of this Department in reference to such
matters in connection with Senate Bill No. 427, 46th Legis-
lature, known as the Departmental General Appropriation Bill.

Your first question is as follows:

"May the Board composed of the Governor,
the Attorney General and the State Treasurer,
upon proper application from a department head,
transfer any balance or surplus from a specific
appropriation to another appropriation, or may
the Board re-allocate and authorize such sur-
plus or balance to be used by the department
head for other purposes?"

You are advised that the Limitation of Payments
clause as it appears in the general rider to the general ap-
propriation bill does not purport to confer authority upon

Hon. George H. Sheppard, Page 2.

the Governor, the Attorney General and the State Treasurer
to re-allocate or transfer moneys specifically appropriated
by the Legislature for one purpose to another and different
purpose. The authority of the Board is confined to auth-
orization of use, as the necessity therefor be demonstrat-
ed, of amounts in such special funds dedicated and devoted
to such departments of the State government, over and
above the total required to defray the amounts and items
for which specific provision has been made by the Legis-
lature. It was not the intention of the Legislature in
the Limitation of Payments clause, to permit a department
head to elect not to use funds for the purpose for which
the Legislature provided them, and thereby convert them
into a supposed surplus in a particular item, available
for use, with permission of the Board. The existence of
a surplus subject to the jurisdiction of the Board is
determined, not by subtracting from the total of the amounts
specifically itemized by the Legislature the amounts and
items the department head elects to use, but by subtraction
of the total of the amounts to be used from the amount
actually available for use in the special fund.

Your second question reads as follows:

"Will the Highway Department be required
to give each employee not budgeted in the bill
and paid from its general highway fund a num-
ber, except those that are classified as season-
al help? In this connection it would be help-
ful if you would define 'seasonal help.'"

The paragraph in the General Rider to the General
Appropriation Bill styled "Salary Payments" reads as fol-
lows:

"No salary for which an appropriation is
made herein shall be paid to any person unless
such person actually discharges assigned duties.
Every month the head of each department shall
attach to the payroll for his department an af-
fidavit, under oath, stating that the persons
listed in said payroll actually performed the
duties for which they were being paid. The
Comptroller shall not issue warrants for the
payment of salaries listed on said payroll un-
less this affidavit is filed with him. Each de-
partment head shall number consecutively the

Hon. George W. Sheppard, Page 3.

salaried positions in his department _for which_
_an appropriation is made herein_ (either out of
the general revenue fund, fees, receipts, special
funds or out of other funds available for use
by said department) and opposite the number of
the position he shall fill out the title of the
position and the name of the person employed to
fill the same. This statement shall be filed
with the Comptroller who shall, when issuing his
warrants to any employee in payment of salary due
said employee, number the warrant with the same
number that is assigned to the position filled
by said employee. Every department head shall
notify the Comptroller in writing of any changes
in personnel in his department. This provision
shall not apply to seasonal help, and shall not
prevent persons drawing their salary warrants
during authorized vacation periods."

In the paragraph immediately following, styled "Addi-
tional Employees Compensation," we find the following lan-
guage:

"When any additional employees, other than
those for which _specific salary appropriations_
have herein been made, are employed and are to
be paid out of contingent appropriations, such
employees shall not be paid a larger amount
than that provided in the regular appropriated
salaries for similar positions in such depart-
ment or agency, ..."

The answer to your question turns upon the interpre-
tation which is to be placed upon the phrase "for which
an appropriation is made herein." If this refers to those
appropriations for a particular department definitely item-
ized as to purpose and amount, the numbering is not required.
On the other hand, if it refers to all salaried positions
authorized either by a specific appropriation or by a lump
sum appropriation, the numbering is required.

Light is thrown upon this question by observing that
in the succeeding paragraph quoted above, we find an ap-
parent distinction recognized, when the Legislature refers
to "additional employees, other than those for which _specific_

Hon. George H. Sheppard, Page 4.

salary appropriations" have been made. It appears to us
that the Legislature, in the salary payment paragraph, has
intended to require the numbering and listing of all em-
ployees of the particular departments who may be employed
upon a salary basis out of any appropriation available for
such purpose to that department, whether it be specifically
itemized as to purpose and amounts, or whether it be a
lump sum appropriation. It is noted specifically that the
Legislature found it necessary to exempt from this pro-
vision "seasonal help." This construction, it appears
to us, accords more nearly with the apparent purpose for
which such provision is inserted in the bill. It seems
that the Legislature has required the numbering of the
positions, the statement of the titles of the positions
and the names of the persons employed to fill the same to
be given by the department head for the convenience and
benefit of the Comptroller, in order that the Comptroller
may determine, from time to time, whether a particular
employee employed out of a lump sum appropriation to
perform a particular type of work is being paid for that
type of work an amount of money greater than that auth-
orized by the Legislature to be paid to those holding
similar particularly itemized positions. If the depart-
ment head need not number salaried positions in his de-
partment which are created and paid for out of a lump
sum appropriation, then, by the same token, there is no
provision in the bill requiring him to communicate to
the Comptroller the title of the position created and
the name of the person employed to fill the same. In
the absence of such information, it appears to us that
the Comptroller is left without any adequate means for
determining whether or not a particular employee paid out
of a lump sum appropriation on a salary basis is entitled
to draw the amount of compensation for which his warrant
is requested to be drawn. We therefore are of the
opinion that the salary payments clause applies to all
salaried positions, whether created by authority of speci-
fically itemized appropriations or by authority of lump
sum appropriations available for such purpose.

With respect to your request for a definition
of the term "seasonal help," you are advised that such
phrase is commonly used to refer to employees engaged in
work exclusively performed at specific seasons or periods
of the year, which, from its nature, cannot be continuous
or carried on throughout the year. Froehly vs. T. M.
Hardon Co., 291 Penn. 197, 139 Atl. 727.

Hon. George H. Sheppard, Page 5.

The provision for seasonal help by our Legislature seems to us to evidence a legislative recognition that the work of the various departments of the State government at certain periods of the year is more onerous than at others, and that the permanent personnel provided by the Legislature for the particular department may be inadequate, during such periods, to carry on, adequately and efficiently, the functions of the department, so that temporary employment of additional workers may be required during the rush reason.

Your last question is as follows:

"May a department head employ an additional employee and place him on the regular payroll, paying his salary out of the contingent appropriation, or does the contingent appropriation comprehend a temporary or an emergent situation authorizing the employment of additional employees for such purpose?"

As indicated above, the Legislature has contemplated, in our opinion, that the provision for seasonal help is to be available for temporary employment to take care of emergent situations. Your question then, with regard to employment out of contingent appropriations, involves the determination of the meaning to be ascribed to the term "contingent expense."

The term "contingent expenses" is frequently used to connote such as are unknown and uncertain, which may or may not be incurred, and which depend upon some future uncertain event. Scott v. City of Jamestown, 217 N.W. 668, 675, 56 N. Dak. 454. It is sometimes used to refer to such expenses as are possible or liable but not certain to occur. Brannin v. Sweet Grass County, 203 Pac. 970, 972, 68 Mont. 412.

On the other hand, the term "contingent expenses," as any other word or phrase used by the Legislature in any enactment, is necessarily influenced and colored in its meaning by the context. We find it used by the Legislature in the departmental appropriation bill under the heading "maintenance and miscellaneous." In the general rider to the general appropriation bill, under the heading of "printing and stationery," paragraph (b), we find an

Hon. George H. Sheppard, Page 6

express recognition that contingent funds appropriated by the Legislature may be used for the publication and distribution of any notices, pamphlets, booklets, rules, regulations, and any other matters of public interest. And under the heading "additional employee's compensation," in the general rider to the general appropriation bill, we find an express recognition by the Legislature that additional employees other than those for which specific salary appropriations have been made by the Legislature may be employed and paid out of the "contingent" appropriation, providing that such employees shall not be paid a larger amount than that provided in the regular appropriated salaries for similar positions in such department or agency.

Under paragraph (b) of the title "Salary and other Provisions" in the general rider we find the following:

"The appropriations herein provided are to be construed as the maximum sums to be appropriated to and for the several purposes named herein, and the amounts are intended to cover and shall cover the entire cost of the respective items and the same shall not be supplemented from any other source; and, except as otherwise provided, no other expenditures shall be made, nor shall any other obligations be incurred by any department of this State, provided however that nothing herein shall prevent any department head from paying less than the maximum amount set forth herein for any salaried positions."

It is thus apparent that where a sum is provided for a particular item of expense, that sum is all that is intended to be available for that item of expense, and may not be supplemented from any source. The limitation applies only to the particular item; that is, a particular typist's salary may not be supplemented from any source, but, if the necessity arises, the department head may (in the absence of such express prohibitions of the type found in the special rider to the Game, Fish & Oyster Commission appropriations, prohibiting the employment of additional salaried employees) hire and pay another typist out of the "contingent expense" fund.

In other words, it appears that the Legislature had in contemplation the use of the term "contingent expense," in the sense of general items of expense not provided for specifically, rather than incidental or unforeseen items. State v. Kurtz, 144 N.E. 120, 124, 110 Ohio State 332.

Having due regard to the context in which we find the word, and the specific authorization for the use of such funds for such purposes, we are impelled to the conclusion that the Legislature has said substantially this:

"We have attempted, so far as possible, to anticipate every item of expense, which may necessarily be incurred in the operation of your department, but we realize that our judgment as to such matters may be inexact, from the very nature of things, and we therefore appropriate to your department a sum of money generally available for operating expenses of your department, except as otherwise herein specifically limited, to take care of those employments and other expenses not herein specifically provided for, but which may necessarily be required to enable your department properly to function."

It is further to be observed, however, that the Legislature has hedged this lump sum appropriation for contingent expenses about with specific restrictions as to the use of the same, placing a limitation upon the amount thereof that may be expended during any three months period by that provision of the general rider which reads:

"It is further provided that, during any three months period, no department can expend more than one-fourth of the appropriation made herein for: ... (b) contingent expenses, ... provided that any unexpended balances from previous quarters may be expended during subsequent quarters."

In addition, a prohibition against the use of such fund to supplement the items provided for "traveling expenses" is contained in that provision of the general rider which reads as follows:

"It is provided that no expenditures shall be made for traveling expenses by any department of this State in excess of the amount of money itemized herein for said purposes."

        578

You are therefore advised that, in our opinion, unless the particular department is specially prohibited from engaging any salaried employees in addition to those provided specifically by the appropriation for that department, a department head may use his "contingent" appropriation for the employment of additional salaried help. The department head is not required to obtain the approval of the Limitation of Payments Board before making such employment, for that Board has jurisdiction only over the expenditure of "surpluses" in certain special funds, and not over the expenditure of "contingent expense" appropriations. The department head, however, will be required to number such salaried positions created and paid out of this contingent fund, as provided in the paragraph on "salary payments" in the general rider to the general appropriation bill.

        Another question presented, but not numbered as such, in your letter, is as follows:

        "Who is the proper person to make the payroll affidavit required by the paragraph 'salary payments' appearing in the general rider to the general appropriation bill?"

        Such provision of the rider requires that every month "the head of each department shall attach to the payroll for his department an affidavit, ..."

        The phrase "head of the department" is used in many instances in the general rider to the general appropriation bill. The "head of each department" is required to keep a record of the absences of the employees of his department and incorporate the information in the department's annual report. The "head of any department" is authorized to excuse a part of his employees at noon on Saturdays. The State Board of Control is directed to notify in writing "the heads of the respective departments" of any dereliction of duty on the part of any porter. The "departmental heads" are then required to have the porter to comply with the orders concerning the improvement of sanitary conditions and the removal of fire hazards. If the porter is discharged, the "head of the department" is required to select another porter to fill his place.

Hon. George H. Sheppard, Page 9

If an employee of a department of the state government engages in certain inhibited political activities, upon the suit of a certain number of qualified voters against such employee and "the head of the department," it is provided that judgment shall be rendered that the employee shall be discharged and the "head of the department" be restrained from re-employing such employee. Where a State-owned automobile is used for certain inhibited private purposes, with the knowledge of "the head of any department," the "department head" is liable to punishment.

It is made the duty of every "department head" to furnish every employee of the department with a copy of certain provisions of the general rider to the general appropriation bill. It is provided that upon a failure so to do, such "department head" shall be removed from office. Under the provisions of the rider to the general departmental appropriation bill, it is provided that no moneys appropriated shall be paid for the re-imbursement of traveling expenses incurred by any State employee to any type of convention within the State or without the State, and in a subsequent paragraph it is provided that such provision shall also apply to "department heads and members of commissions."

An examination of all of these provisions reveals that the term "department head" is used in contradistinction to "State employees," and it is apparent that the term "department head" was used in the sense of those "officers," as distinguished from employees, of the State government charged with the primary responsibility of administering the affairs of a particular branch of the State government. In those instances where a particular branch of the State government is headed by one individual, such as the Comptroller, the State Treasurer, and the Attorney General, it is required that the payroll affidavit be made by the individual who heads that particular division of the State government. In instances where a particular branch or division of the State government is headed by a Board or Commission, it is contemplated that the affidavit shall be made by the Chairman of that Board or Commission.

It is, of course, recognized by the Legislature that the affidavit so made by the department head must be made by him upon information furnished to him by his departmental employees, for it must necessarily have been

Hon. George H. Sheppard, Page 10.

contemplated by the Legislature that the activities of some of the departments are so far flung that the department head cannot have individual personal first-hand knowledge of the facts required to be stated in the affidavit, and that he must necessarily rely upon his departmental division heads to furnish that information to him. This, however, does not relieve the department head from the responsibility of making the affidavit required by the Legislature.

We trust that the above fully answers your inquiries.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *R. W. Fairchild*

R. W. Fairchild
Assistant

RWF:pbp


APPROVED AUG 31, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY BWB