Robinson, J.
 

 This cause brings to this court for construction, among other things, an act “conferring jurisdiction upon the Public Utilities Commission over the transportation of persons or property for hire in motor vehicles, and providing for the supervision and regulation of such transportation,” found in 110 Ohio Laws, at page 211, passed March 29, 1923, filed in the office of the secretary of state April '28, 1923, and in effect July 27, 1923.
 

 While the question of the status of the several applicants for certificates of convenience and neo
 
 *5
 
 essity, growing out of the different dates on which snch applicants began operation with respect to the date of the filing of the act in the office of the secretary of state and its time of taking effect, was raised before the Public Utilities Commission, and is raised here, the major question is the power conferred by the act upon the Commission.
 

 It is the contention of plaintiffs in error that in determining the public convenience and necessity under the act the Commission is limited to an inquiry whether the territory which an applicant seeks to serve was at the time of the application being served by other motor-propelled vehicle operated over the publie streets, roads, or highways for hire, or if so served, whether the service was adequate; while the defendants in error contend that in determining the public convenience and necessity the scope of the inquiry will be whether public convenience and necessity require further common carrier transportation in the territory which the applicant seeks to serve.
 

 To adopt the view of the plaintiffs in error we must impute to the Legislature a purpose to enact a law ostensibly for the benefit of the public, but which in its operation would limit to a mere choice which of several persons, corporations, or companies should operate a bus line upon its public streets, roads, and highways as a common carrier. In our form of government the only excuse for any law, whether it be law by tradition, legislative enactment, or judicial pronouncement, is that it will serve the public weal.
 

 The courts in construing a statute, where a reasonable interpretation can be given to it which
 
 *6
 
 will make it operate for the welfare of the general public, as distinguished from the welfare of certain individuals, groups, or classes of individuals, will not impute to the Legislature the unworthy purpose of having intended to enact a law for the benefit of certain individuals, groups, or classes of individuals, as distinguished from the public.
 

 The first sentence of Section 614-87 of the act (110 O. L., 215), “No such motor transportation company shall begin to operate any motor propelled vehicle for the transportation of persons or property, or both, for compensation, between fixed termini or over a regular or irregular route in this state, without first obtaining from the public utilities commission a certificate
 
 declaring that public convenience and necessity require such operation,”
 
 is a concise, plain, unambiguous declaration by the Legislature that before motor transportation companies, commonly called bus lines, shall begin operating as common carriers over public streets, roads, and highways a certificate shall be obtained from the Public Utilities Commission that the public convenience and necessity require such operation. The discretion to grant or refuse such certificate, except in certain cases hereinafter referred to, is lodged in the Public Utilities Commission. That discretion is controlled by the existence or nonexistence of certain physical conditions in the territory to be served, which do or do not make such service a public convenience and necessity. The determination of the existence or nonexistence of such a condition is vested in the Public Utilities Commission, without any legislative limitation or restriction as to the
 
 *7
 
 character of circumstances and physical situations which the Commission may consider in mating such determination.
 

 The Commission upon hearing found that the Scioto Valley Railway
 
 &
 
 Power Company, “according to the record, is handling on the ColumbusChillicothe Division an average of 1,800 passengers per day; the facilities of the ¡Steele bus line [a bus line which has operated between Chillicothe and Portsmouth for some years] are only half used; the passenger carrying facilities of the traction line are over half idle; the general public use the parallel state highway to such an extent that it is generally congested; the cars of the applicants [six in number] carry an average of 17 persons per round trip.”
 

 The Commission further found that they, the applicants, “do not, however, make, or offer to mate, any such permanent investment as carries assurance of a reasonable perpetuity of service should the owners of the Scioto Valley Traction Line terminate its operations,” and “that public convenience and necessity do not require the operation by the applicants as in their said applications set forth.”
 

 Keeping in mind that this, as all legislation, is enacted for the public weal, and that the particular convenience of the applicants, the traction company, and certain persons who patronize the bus lines, must yield to the general public convenience, can it be said that that public convenience will be furthered by the establishment of a service which can serve but so small a portion of the general public and which will jeopardize the
 
 *8
 
 service that all of the general pnhlic are now enjoying or can enjoy at little or no inconvenience? In other words, would the public convenience be served by the installation of additional inadequate service which would result eventually in the loss of the adequate service?
 

 As we view it, the Legislature was not concerned so much with the question of who shall reap the emoluments of the transportation service as it was in securing consistently and continuously an adequate transportation service for the convenience of the public. The Commission was created and functions for the purpose of aiding the public in securing from utilities adequate service, and the Commission, as in this case, upon facts justifying it, having determined that the general public of a particular vicinity has adequate service, an attempt to secure to that public additional service, which in itself would be neither adequate nor capable of being made so without great inconvenience to those using the streets, roads, and highways in the ordinary way, would be at the imminent risk of losing to the general public the adequate service it already has, wherefore the general convenience requires that such additional service be denied.
 

 It is, however, contended by the plaintiffs in error that the second sentence of Section 614-87, “The Commission shall have the power, after hearing, when the applicant requests a certificate to operate in a territory already served by a motor transportation company holding a certificate of public convenience and necessity from the Commission, to grant a certificate only when the ex
 
 *9
 
 isting motor transportation company or companies serving such territory do not provide the service required or the particular kind of equipment necessary to furnish such service to the satisfaction of the Commission,” indicates that the Legislature had in contemplation only motor bus transportation, which renders it necessary that the whole act be so interpreted as to require the Commission to confine its inquiry to the question whether the general public of the vicinity sought to be served is being adequately served by other bus lines. In construing this sentence, it must be remembered that up to the time of the enactment of this act there was no authority in the Public Utilities Commission to issue a certificate of public convenience and necessity to operators of bus lines. Therefore, when the Legislature used the language, “when the applicant requests a certificate to operate in a territory already served by a motor transportation company
 
 holding a certificate of public convenience and necessity from the Commission,
 
 to grant a certificate only when the existing motor transportation company or companies * * * do not provide the service required,” it did not have in contemplation an existing situation, for no such situation could exist prior to the authorization of the Commission to issue certificates of necessity, which authorization is for the first time made by this act, but was attempting to provide for future situations, so that in the future, when the commission had issued such certificate, and had therefore found the public necessity, and the recipient was furnishing adequate service, such service should not be jeopardized by an additional in
 
 *10
 
 adequate service -which, might result in depriving the public of its adequate service. The quoted sentence does not require the construction that the legislation was intended to ripen into a vested right the permissive use by a bus line of the streets, roads, and highways of this state, or to confer upon such bus line a monopoly; but rather the construction that its sole purpose was to secure to the public the best service with the least inconvenience to those using the streets, roads, and highways in the ordinary .way.
 

 The words, “in all other cases, with or without hearing, to issue such certificates as prayed for, or to refuse to issue the same,” undoubtedly vested in the 'Commission a discretion to issue such certificate without a hearing where the situation is such that the public convenience and necessity are apparent and unquestioned, but do not eliminate from its consideration public convenience and necessity as the controlling factor in its determination to issue or not to issue a certificate.
 

 The next provision of the section, which requires the Commission to issue a certificate of public convenience and necessity upon the filing of an affidavit by the operator of a bus line, who had been operating such bus line prior to the date of' the filing of this enactment with the secretary of state, is not applicable to any of the plaintiffs in error here, and the validity or construction of that provision is not before the court in this case for consideration.
 

 The courts of other jurisdictions have had under consideration the subject of certificates of public convenience and necessity, and in many instances
 
 *11
 
 have gone further than this court has found it necessary to go in this case.
 

 In the case of
 
 West Suburban Transportation Co.
 
 v.
 
 Chicago & W. T. Ry, Co.,
 
 309 Ill., 87, 140 N. E., 56, the Supreme Court of Illinois held:
 

 “To authorize the Commerce Commission to grant a bus company authority to operate its lines and to serve the same public already served by an existing street railroad system, it must appear that the street railroad company was not rendering adequate and convenient service, and that' the operation of the bus lines would eliminate such inadequacy and inconvenience; the convenience and necessity of the public being a primary consideration.”
 

 In
 
 Choate, Recr.,
 
 v.
 
 Commerce Commission,
 
 309 Ill., 248, 141 N. E., 12, the Supreme Court of Illinois held:
 

 “That a proposed bus line serving the same territory as an established interurban line may accommodate a few individuals does not justify a certificate permitting it to operate; the convenience and the necessity whjch the law requires being the convenience and necessity of the public, as distinguished from that of an individual, or any number of individuals.”
 

 In the case of
 
 People, ex rel. N. Y. C. & H. R. R. Co.,
 
 v.
 
 Public Service Comm.,
 
 195 N. Y., 157, 88 N. E., 261, the court held:
 

 “A certificate of public convenience and necessity is to be granted a railroad company upon considerations, not alone, bearing upon the convenience of the public, but affecting other transportation companies which are already serving the
 
 *12
 
 territory; hence, a transportation company, so interested, is a party aggrieved by the granting of such a certificate, and as such has an interest in the controversy.”
 

 The case of
 
 Rapid Ry. Co.
 
 v.
 
 Michigan Pub. Util. Comm.
 
 (Mich.), 196 N. W., 518, is an authority for the contention of the plaintiffs in error here. The reasoning of that decision, however, is not persuasive. It is there stated by a quotation from the brief of one of the Michigan Public Utility Commissioners that—
 

 “An examination of the entire act fails to disclose a single word or provision which in any way indicates that the legislature had in mind the establishment of a pqlicy of protecting existing railroad transportation interests as against motor transport interest.”
 

 Neither does the act here under consideration; nor do we concur in the view of those courts who have expressed the view that any public utility requirement has for its purpose “the establishment of a policy of protecting existing railroad transportation as against motor transport interest.” Nor, indeed, do we concur in any policy of protecting any existing public utility against competing public utilities, but consider, "rather, that it is the policy of the federal government and the government of the various states by legislation to secure to the general public, through Public Utility Commissions, or similar administrative bodies, adequate service from public utilities, which of course includes price, character of service, and ■continuity; that regulation through commissions is for the purpose of accomplishing the ultimate ob
 
 *13
 
 ject, adequate service; and that the benefits, if any, by way of restricted competition, etc., which inure to established public utilities, are incidental to such regulation, but not its object or purpose.
 

 The court in the
 
 Michigan case
 
 looks to the history of the legislation, and discovers that as originally introduced the bill was entitled “A bill to regulate carriers of persons and property on the public highways of this state;” that the words “shall be issued in accordance with public convenience and necessity” were inserted by the Senate Committee and stricken out by the Senate; and that the bill so passed by the Senate was then sent to the House, where the words were again inserted and the bill thereafter enacted by both branches with the words “shall be issued in accordance with public .convenience and necessity” as a part thereof — which proves nothing as to legislative intent beyond the fact that the Legislature of the state of Michigan refused to enact the bill as introduced and did enact it as amended, and that the words inserted were deemed significant by the Legislature. The court then says in effect that it is unwilling to extend the scope of the act beyond the regulation of motor busses, particularly with reference to “the number of persons, firms or corporations who should be permitted to so operate;” that is to say, that wherever there are persons to be transported the public convenience and necessity require that a sufficient number of motor busses be certified to transport them.
 

 The court in that case seemed to lose sight of the fact that the purpose of regulation of public utilities is the benefit to the general public, and
 
 *14
 
 not the benefit 'to the utility, and that the benefits which inure to the utility result only because they are concomitant with the benefits which are secured to the public; that government, except as it is essential to the continuance of the public service, is no more concerned with the earnings of a public utility than it is with the earnings of a corner grocery.
 

 The argument in the above case not being persuasive, and the interpretation, in our opinion, not sound, we decline to adopt or follow them.
 

 Touching the contention of the plaintiffs in error that three methods are provided to procure certificates, (1) by “affidavit, which applies to a motor carrier that was operating in good faith when the act was filed in the office of the secretary of state, which date was April 28, 1923,” (2) by “application when the motor carrier began operation before the act became effective, which was July 28 [27], 1923,” and (3) by “application when the applicant intends to begin to operate,” it is sufficient to say, though the language of the act is inapt, that when ¡Sections '614-85, 614-86, 614-87, 614-88, 614-89, 614-90, 614-91, 614-92, and 614-94, are construed together, it is apparent that the Legislature intended to require a certificate of convenience and necessity to be procured by every operator of a motor propelled vehicle for the transportation of persons for compensation between fixed termini over the streets, roads, and highways of the state as a prerequisite to his right to operate after the date the act went into effect, July 27, 1923, for it provided in Section 614-85:
 

 “No * * * person * * * shall operate
 
 *15
 
 any motor propelled vehicle for the transportation of persons * * * for compensation, on any public highway in this state except in accordance with the provisions of this chapter.”
 

 In Section 614-86 it provided:
 

 “The Public Utilities Commission of the State of Ohio is hereby vested with power and authority to supervise and regulate each such motor transportation company in this state.”
 

 In Section 614-87 it provided:
 

 “No such motor transportation company shall begin to operate * * * without first obtaining from the Public Utilities Commission a certificate,” etc., and that “where a motor transportation company has been actually operating in good faith upon the date of filing this, act in the office of the secretary of state, it shall file with the Commission an affidavit * * * and thereupon a certificate * * * shall issue.”
 

 It provided in Section 614-88:
 

 “Except as provided in Section '614-84 [within which exception the plaintiffs in error do not come], no * * * person * * * shall operate any automobile •* * * for the transportation of persons * * * for compensation, over any public street, road or highway
 
 * * *
 
 over which any motor transportation company is operating under a certificate of convenience and necessity issued by the commission
 
 * * *
 
 until such * * * person * * * shall have secured a certificate
 
 * * *
 
 from the Commission.”
 

 In Section 614-90, it provided:
 

 “The Commission shall adopt rules prescribing the manner and form in which such motor trans
 
 *16
 
 portation companies * * * shall apply for the certificates. * * *”
 

 And it provided in Section 614-92:
 

 “Except as otherwise expressly provided, it shall he unlawful for any motor transportation company * * * to operate in this state on any route, other than the route provided for in the certificate granted by the Commission. ’ ’
 

 The net result of all these provisions makes it unlawful for the applicants and all other persons to operate a motor transportation vehicle upon any of the streets, roads, and highways of the state, except in cases of emergency and except as provided in Section 614-84, without first having secured a certificate of necessity and convenience from the Public Utilities Commission, and while the language of Section 614-87 is not entirely clear and wholly unambiguous, standing alone, construed in connection with the other sections of the act, and giving force to the act as a whole, this court is unable to construe the act otherwise than as requiring any and all persons to secure a certificate of convenience and necessity as a prerequisite to the operation of a motor transportation company over the streets, roads, and highways of the state.
 

 The act on the day it went into effect divided the operators of motor bus lines into two classes, viz., those who were operating over an established route on the date the act was filed in the office of the secretary of state and those who began or desired to begin operations thereafter.
 

 As to the first class, it provided that upon the filing of an affidavit establishing certain facts the
 
 *17
 
 Commission shall issue a certificate of public convenience and necessity, which provision is not involved in this case; nor is its construction or validity here considered.
 

 As to all others, an application for a certificate of convenience and necessity must be filed, and the Commission is authorized to issue a certificate to such, only, when it finds the public convenience and necessity require it; and in determining that question the Commission, where the public convenience and necessity are apparent and unquestioned, may issue the certificate upon its own knowledge and information, or may hear and consider evidence.
 

 The order of the Public Utilities Commission is affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Jones, Matthias and Allen, JJ., concur.
 

 Wanamaker, J., not participating.