Robinson, J.
 

 No. 20109 is a proceeding in error, prosecuted by the Pennsylvania Railroad Company against the Public Utilities Commission, to reverse the final order of that commission authorizing the Forrest Motorbus Transportation Company to sell,
 
 *82
 
 and the Buckeye Service Company to buy, certificates of public convenience and necessity Nos. 136 and 1119, authorizing the operation of motor transportation lines for the transportation of passengers between Cleveland and Medina, and between Cleveland and Wooster, Ohio.
 

 No. 20110 is a proceeding in error prosecuted by the same plaintiff in error from a like order with reference to the sale of the certificate of Charles C. Schafer, No. 49, to the same company, authorizing operation between Columbus and Wilmington.
 

 No. 20111 is a proceeding in error prosecuted by the same plaintiff in error from a like order with reference to the sale of the certificate of Chris Reitler, No. 493, to the same company, authorizing operation between Blanchester and Cincinnati.
 

 No. 20112 is a proceeding in error prosecuted by the same plaintiff in error from a like order with reference to the sale of the certificates of C. M. Be-bout, Nos. 1890, 1139, and 1131, to the same company, authorizing operation between Mansfield and Mt. Vernon and between Mt. Vernon and Coshocton.
 

 No. 20113 is a proceeding in error prosecuted by the same plaintiff in error from a like order with reference to the sale of the certificate of Chris Reitler, No. 105, to the same company, authorizing an operation between Columbus and Blanchester.
 

 No. 20114 is a proceeding in error prosecuted by the same plaintiff in error from a like order with reference to the sale of the certificate of Homer Johnson, No. 103, to the same company, authorizing an operation between Columbus and Wilmington.
 

 No. 20115 is a proceeding in error prosecuted by
 
 *83
 
 the same plaintiff in error from a like order with reference to the sale of the certificate of Mason & Mason, No. 2075, to the same company, authorizing an operation between Mt. Vernon and Newark.
 

 No. 20116 is a proceeding in error prosecuted by the same plaintiff in error from a like order with reference to the sale of the certificate of Fred Albery, No. 1961, to the same company, authorizing an operation between Columbus and Johns-town.
 

 The record discloses that the Buckeye Service Company is a corporation organized under the laws of Ohio, with its principal place of business in Columbus, Ohio, with an authorized capital stock of 2,000 shares without nominal or par value; that it has sold 25 of said shares to five persons for the sum of $100 per share. Its assets at the time of the hearing consisted of the money received from the sale of the 25 shares of stock; $250,000 borrowed from the Highway Transportation Corporation; the contracts of purchase of used equipment and its contracts for 12 White Motor Company busses, to cost approximately $84,000, upon which it had made some small initial payment; the claimed assets of the contracts of purchase of the various certificates hereinbefore enumerated; and pending applications for certificates of convenience and necessity covering certain routes connecting the routes it was seeking the authority of the Public Utilities Commission to purchase.
 

 The contract with the Forrest Motorbus Transportation Company for certificates Nos. 136 and 1119 provided for the payment to the Forrest Motorbus Transportation Company of the sum of $75,-
 
 *84
 
 000 and for the acquisition with said certificates of four Fageol busses, two Pierce Arrow busses, and two Studebaker busses, that cost originally $34,950, present value not disclosed.
 

 The contract with Charles C. Schafer for certificate No. 49 provided for the payment to him of the sum of $15,000 and for the acquisition by the Buckeye Service Company of no equipment therewith.
 

 The contract with Chris Reitler for certificate No. 493 provided for the payment to him of the sum of $10,000 and the acquisition with the certificate of three International busses of -an estimated value of $2,500 to $3,000.
 

 The contract with C. M. Bebout for certificates Nos. 1890, 1139, and 1131 provided for the payment to him of the sum of $45,000 and the acquisition of five 7-passenger cars, of the estimated value of $5,000.
 

 The contract with Chris Reitler for certificate No. 105 provided for the payment to him of $15,000 and the acquisition of no equipment with such certificate.
 

 The contract with Homer Johnson for certificate No. 103 provided for the payment to him of $15,000 and the acquisition of no equipment with such certificate.
 

 The contract with Mason & Mason for certificate No. 2075 provided for the payment to it of $35,000 and the acquisition of three Studebaker busses that cost originally $12,900, and that had been in service for various periods of time, from three months to more than a year.
 

 The contract with Fred Albery for certificate
 
 *85
 
 No. 1961 provided for the payment to him of $7,000 and the acquisition of one Reo bus that had been in service more than two years, and for which he had paid, including the certificate which he had purchased from a prior holder, the sum of $3,850.
 

 Its liabilities consisted of its indebtedness to the Highway Motor Transportation Corporation of $250,000, the unpaid balance for used equipment, and for the transfer of certificates due each of the owners of the various certificates it sought authority to purchase, and its obligation to pay for the 12 White Motor Company busses.
 

 Assuming that the White motorbusses are of the value agreed to be paid for them, the assets and liabilities in that respect balance; that the equipment it has agreed to purchase from the various certificate holders is of the value indicated in the above statement, the record still discloses that the liabilities of the Buckeye Service Company greatly exceed its assets, that it has obligated itself not only to pay the value of the old equipment it is seeking to acquire in this proceeding, but has obligated itself to pay for the certificates the approximate sum of $157,300 in excess of the value of the equipment, and that it will be necessary for it to issue and sell its stock or bonds, or both, in a sum greatly in excess of its assets.
 

 The Legislature has imposed in the Public Utilities Commission discretion to grant or withhold its consent to the transfer of certificates of convenience and necessity. Section
 
 614-87a,
 
 General Code, after providing for the contingency of the death of a certificate holder and for the contingency of the dissolution for any cause of a partnership
 
 *86
 
 holding a certificate, provides: “In all other cases a certificate of public convenience and necessity shall not be transferred except with the consent of the commission, after a public hearing had thereon” — the only expressed limitation upon such discretion being that its exercise must be preceded by a public hearing upon the question of the transfer, the implied limitation being that the purchaser be first found to possess the qualifications essential to an original recipient of a certificate of public convenience and necessity; that is, that he must be a person of such character and habits as to justify the Public Utilities Commission in granting him a license to use the public highways for the operation of a motor transportation line, and that he must possess the financial ability to enable him to properly and continuously serve the public convenience and necessity.
 

 This court has repeatedly declared that a certificate of convenience and necessity, issued by the Public Utilities Commission to a motor transportation company, is not a franchise, and that the holder of such certificate does not thereby acquire a property right in the route covered by such certificate; that the issuing of such certificate is authorized only for the purpose of promoting the public convenience and necessity, and not for the purpose of conferring upon the holder of such certificate any proprietary interest or franchise in the public highways; that the purpose in limiting the number of certificates that may be granted over the same route is to promote the public convenience and necessity by restricting the number of busses to the needs of the public, and thus occasion
 
 *87
 
 as little inconvenience as possible to the public using the highway in the usual and ordinary way, and to insure to the holder of the certificate such immunity from competition as will enable him to serve the public convenience and necessity by regular and continuous public service; that a certificate of convenience and necessity is in the nature of a revocable personal permit, and has not the attributes of a property right.
 

 In the case of
 
 Estabrook, Receiver,
 
 v.
 
 Public Utilities Commission of Ohio,
 
 112 Ohio St., 417, 147 N. E., 761, it was held: “A certificate of public convenience and necessity is not an asset with which a receiver of a motor transportation company can be charged.”
 

 And in the case of
 
 Westhoven et al.
 
 v.
 
 Public Utilities Commission of Ohio,
 
 112 Ohio St., 411, 147 N. E., 759, it was held:
 
 “A
 
 certificate of public convenience and necessity * * # to operate ‘motor transportation company,’ is a license personal in its character, and is not transferable, and does not pass by succession.”
 

 Thereafter the Legislature enacted Section 614-
 
 87a,
 
 and provided that the personal representative of a deceased certificate holder should succeed to the rights the deceased had under such certificate and that a member of a partnership may acquire the rights of the partnership under a certificate granted to such partnership, but provided that as to all other certificates transfer can only be made with the consent of the Public Utilities Commission.
 

 In the case of
 
 Hogan et al.
 
 v.
 
 Public Utilities Commission of Ohio,
 
 113 Ohio St., 83, 148 N. E.,
 
 *88
 
 581, arising upon facts occurring subsequent to the enactment of Section 614-87», it was held:
 

 “A
 
 certificaté of convenience and necessity issued to a motor transportation company by the Public Utilities Commission is a revocable license, which confers no property rights upon the holder thereof, and, for good cause shown, the same may at any time be revoked, altered, or amended by the commission.
 

 “Such right to revoke, alter, or amend applies equally to a certificate issued by virtue of an affidavit filed by motor transportation companies operating on or before April 28, 1923, and a certificate issued upon the written application of motor companies beginning operations after that date. ’ ’
 

 It has been, and now is, the judgment of this court that the purpose of the motor transportation legislation is to secure to the public necessary and convenient common carrier service over the highways, but not to surrender any of the rights of the public in such highways to persons, partnerships, or corporations operating motor transportation lines; that such certificates are issued for the benefit of the public and not for the benefit of the recipient, are personal in their character, and do not have the attributes of property.
 

 Since a certificate of public convenience and necessity to operate a motor transportation company over a designated portion of the public highways does not confer upon the recipient anything more than a revocable permit, and can only be granted for the reason that the public convenience and necessity require it, and the character, amount
 
 *89
 
 and price of such service, as well as the competition in such service, are under the direct control of the state, through the Public Utilities Commission, and the operation of a motor transportation line under such certificate does not involve the acquisition or erection of a plant, the acquisition or construction of a roadway, or the fabrication of machinery peculiar to or specially for operation under such certificate, the holder of such certificate does not acquire any additional rights thereunder, in the nature of good will or going concern, by reason of his operation under such certificate.
 

 Good will as a capital asset does not attach to the property of a motor transportation public utility which has secured a monopoly by law or by state control of competition; nor does it attach to a revocable permit to use the public highways to serve the convenience and necessity of the public. “Going concern” contemplates an established business and acquired customers. A certificate of convenience and necessity presupposes that the customers to be — the public — have required the motor transportation service, hence the necessity for the granting of the certificate by the Public Utilities Commission. Instead of the motor transportation company establishing the business and attracting the customers, the state acquires and constructs the roadway, gives the motor transportation company free and exclusive common carrier use of it, not that the motor transportation company may attract customers and build up a business, but in response to a demand of the customers ready and anxious to be so served. No plant is required to be built, no roadway is required to be
 
 *90
 
 constructed, and no machinery peculiar to the service under the particular certificate is required to be manufactured. The recipient of the certificate purchases a bus ready made, drives it upon the public'highways already constructed, and serves a waiting public so anxious to be served that the Public Utilities Commission has found it necessary to issue the certificate.
 

 In determining solvency, sums paid for a certificate may not be considered in determining the amount invested in such operation or in determining the capital assets of a motor transportation company. The fact that an applicant for consent to purchase a certificate has agreed to pay for the transfer of such certificate a price greatly in excess of the value of the equipment acquired with the transfer requires the conclusion that such excess sum so expended will be an added burden to the service, which the public will be required to sustain. An order consenting to such transfer is unreasonable and unlawful, unless it be made to appear that it is not the design or purpose to credit the capital assets of - such purchasing motor transportation company with the excess sum so expended, and that such expenditure will not affect the solvency of the purchaser.
 

 Cause No. 20028 is a proceeding in error prosecuted by the Pennsylvania Railroad Company against the Public Utilities Commission to reverse the final order of that commission authorizing Chris Reitler to amend his time schedule and tariff so as to permit him to operate through service between Columbus and Cincinnati, under certificates Nos. 105 and 493, being, respectively, certifi
 
 *91
 
 cates to operate between Columbus and Blancbester and between Blanchester and Cincinnati. The order of the commission was issued without a hearing, upon published notice, but without written notice to other common carriers operating in the same territory.
 

 An application to convert a local service, operated under two separate certificates, into a through service, is in effect an application for a certificate of convenience and necessity to operate a new route, it being in effect an application to change one of the termini of each of the existing certificates and to convert two separate routes into one. Such an application must be made under Section 614-91, General Code, as an application for a new route; and such publication and notice “to all motor transportation companies, street railroads, interurban railroads and steam railroads operating in the territory through which the applicant proposes to operate” must be given as provided in that section; and before an order can issue granting such through service, the Public Utilities Commission must find that the public convenience and necessity require such service.
 

 The respective orders of the Public Utilities Commission in the above-named cases will be reversed.
 

 Orders reversed.
 

 Marshall, C. J., Day, Allen, Kinkade, Jones and Matthias, JJ., concur.