Hart, J.
 

 In order to secure from the Public Utilities Commission an amendment to a contract carrier’s permit so as to take on a new or additional customer, a contract carrier must qualify under and meet the requirements of Sections 614-109 and 614-83, G-eneral Code.
 

 By virtue of these sections, an amended permit shall be granted if the applicant has complied with the law, and the rules and regulations of the commission; is operating as a private motor carrier; is a proper person to receive a permit; and the granting of the permit Avill be “consistent with the declared policy, and purpose, of the regulation of transportation by common and contract carriers by motor vehicle, as provided in this chapter.”
 

 It is conceded by the brief of the commission that the applicant Bray qualified in every respect except that the commission did not find that the granting of the permit to him would be “consistent with the declared policy, and purpose, of the regulation of transportation by common and contract carriers by motor vehicle,” as provided by Section 614-109, G-eneral Code, but did find that the granting of such permit “would be inimical to the public interest.”
 

 No facts were found as a basis for this conclusion. No opinion was written by the commission and the court has no intimation as to the motivating circumstances which influenced the decision. Some light may be thrown upon the matter from the report and recommendation of the attorney examiner who heard the evidence and who reported to the commission as follows :
 

 “* * * it has not been the policy of the commission to grant any application Avhich rests upon the
 
 *412
 
 ability of the applicant to produce a transportation movement on the basis of less cost to the shipper. In fact, the commission would no doubt deny any grant of authority to an applicant, the sole claim of which rests upon the applicant’s ability to provide cheaper transportation rates, since the granting of the same unquestionably would be opposed to the policy of the commission’s jurisdiction to regulate all types of motor transportation in the state of Ohio.
 

 “The evidence in this case tends to prove that L. J. Bray is in a position to offer a service to the Ferro Enamel Corporation at cheaper rates than those offered by the common carriers in his vicinity, but if the commission were to grant the application upon this' basis, in this as in other cases which might arise in the vicinity, regular and irregular operations might be destroyed for obvious reasons.”
 

 A careful examination of the record fails to disclose any testimony as to what effect, if any, the granting of this permit would have upon any person or the public other than the applicant Bray, the protestant Pemberton, and the shipper, the Ferro Enamel Corporation. No member of the public appeared at the hearing or in any way opposed the granting of the permit notwithstanding the notice of Bray’s application and its purpose was published in a Zanesville newspaper for three consecutive weeks as provided by law.
 

 The undisputed testimony before the commission was to the effect that the shipper was obliged to have Pemberton make an average of six trips from Crooks-ville to Sebring each month, transporting five tons of merchandise on each trip, for'which the shipper paid Pemberton $30 per trip or $180 per month. On the other hand, the record shows that Bray’s contract with the shipper, made subject to the approval of the commission, provides that he would use a truck carrying 10 tons, making three trips per month at a charge of $38 per trip, which would mean a saving to the ship
 
 *413
 
 per of $22 on each 10-ton shipment, or a total saving of $792 per year. This saving would amount to more than five per cent per annum on the capital investment in the business of the shipper, the Ferro Enamel Corporation. The testimony also shows that the shipper is in competition at Sebring with other manufacturers of the same product and that in order to secure that business must meet the prices of such competitors.
 

 There is no testimony as to whether or in what manner a reduction in price of such transportation would injuriously affect the public interest. Fundamentally, the regulation of private shipping through private contract carriers should not unnecessarily interfere with the right of private contract. While the Public Utilities Commission is authorized to regulate and control private contract carriers, the shipper by contract carrier should have liberal opportunity to contract for transportation of his goods or merchandise with carriers who offer the best facilities and the most advantageous rates, unless it clearly appears that a contrary policy is necessary to protect the public interest.
 

 This court has heretofore held that the primary purpose of legislative enactment for the regulation of carriers through the Public Utilities Commission is to secure the best transportation service possible, and not to conserve the private interest of any carrier, unless the public interest demands it.
 

 In this connection, Judge Robinson said, in the case of
 
 McLain
 
 v.
 
 Public Utilities Commissions
 
 110 Ohio St., 1, 8, 143 N. E., 381, that “the Legislature was not concerned so much with the question of who shall reap the emoluments of the transportation service as it was in securing consistently and continuously an adequate transportation service for the convenience of the public.”
 

 The same member of this court, as the writer of the
 
 *414
 
 opinion in the case of
 
 Pennsylvnia Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 116 Ohio St., 80, 88, 155 N. E., 694, stated:
 

 “It has been, and now is, the judgment of this court that the purpose of the motor transportation legislation is to secure to the public necessary and convenient common carrier service over the highways, but not to surrender any of the rights of the public in such highways to persons, partnerships, or corporations operating motor transportation lines; that such certificates are issued for the benefit of the public and not for the benefit of the recipient, are personal in their character, and do not have the attributes of property. ’
 
 ’
 

 In the regulation of common carriers, the Public Utilities Commission may not grant certificates of convenience and necessity to other carriers to occupy the same route or territory already served by a common carrier, provided the latter will, within a reasonable time, furnish service equivalent to that proposed to be furnished by the later applicant for a certificate. Section 614-87, General Code ;
 
 H. & K. Motor Transportation, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 135 Ohio St., 145, 19 N. E. (2d), 956. Conversely, in the case of private transportation, a present permit holder should be required to furnish approximately equivalent service before he is entitled by protest to deprive the shipper of a substantially more beneficial contract. Section 614-87b, General Code.
 

 By the order of the commission in this case the shipper is denied any prospect of securing a better rate although, according to the evidence, ordinary business principles would seem to entitle him to the same.
 

 The court is of the opinion that the order of the commission, denying the amendment sought by the applicant in this case, is unreasonable and unlawful, and such order is therefore reversed, and the commission
 
 *415
 
 is directed to grant the amendment to the permit as prayed for in the application.
 

 Order reversed.
 

 Weygandt, C. J., Turner, Williams, Matthias and Zimmerman, JJ., concur.
 

 Bettman, J., not participating.