Hart, J.
 

 While there may have been some irregularity in the signing of the contracts between Hazeiton and the theatre companies seeking his service, this was later corrected by action of the boards of directors of the shippers before the commission made its order and no prejudice was suffered by any one on account of this irregularity. It is not claimed and cannot be claimed that the contracts, as they now stand, are not valid to all intents and purpose.
 
 Jenkins Steamship Co.
 
 v. Preston, 186 F., 609.
 

 The next complaint of the protestants is that through the course of conduct of Hazeiton in taking on additional theatres from time to time, he has become a common carrier and not a private contract carrier. Surely, it cannot be said that a specified number of contracts fixes the status of the carrier so that an excess of that number makes one who has enjoyed the status of a private contract carrier a common carrier.
 

 A common carrier is one who holds himself out to the public as engaged in the business of transporting persons or property from place to place, for compensation, offering his services to the public generally. 9
 
 *232
 
 American Jurisprudence, 430, Section 4;
 
 Goodman
 
 v.
 
 N. Y., N. H. & H. Rd. Co.,
 
 295 Mass., 330, 3 N. E. (2d), 777, 106 A. L. R., 1151.
 

 The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently. The controlling factor in determining the status of one as a common carrier is his public profession or holding out, by words or by course of conduct as to the service offered or performed. 9 American Jurisprudence, 431, Section 4;
 
 State, ex rel. Stimson Lumber Co.,
 
 v.
 
 Kuykendall, Dir.,
 
 137 Wash., 602, 243 P., 834, 55 A. L. R., 954.
 

 On the other hand, one performing transportation service for specific customers at prices fixed in each case by definite contract, for a particular group or class of persons under a special contractual arrangement, or for a particular person only is not a common carrier. 9 American Jurisprudence, 432, Section 5;
 
 Hissem
 
 v.
 
 Guran,
 
 112 Ohio St., 59, at page 63, 146 N. E., 808;
 
 Faucher
 
 v.
 
 Wilson,
 
 68 N. H., 338, 38 A., 1002, 39 L. R. A., 431. See annotations 18 A. L. R., 1317 and 42 A. L. R., 855.
 

 The applicant in this case has always confined his service to the same type of transportation and has not held himself out as accepting transportation from the public generally. It is admitted that this service is of a highly specialized type and limited to a relatively small class of shippers. Furthermore, the record shows that Hazelton, by reason of his knowledge and experience in the theatre business, especially in the booking of films, is able to represent his shippers and to act immediately for them as their agent in selecting substitute films when those previously contracted for or selected are not available, a service which is claimed to be of large value to such theatre owners and operators.
 

 
 *233
 
 Hazelton’s service also contemplates and provides for deliveries of films and equipment at the doors of the respective theatres and not at fixed termini in cities where such theatres are located. It must be said, in fairness however, that the record shows that protestants, as common carriers, made deliveries in this respect beyond the requirements and schedules required of them, presumably to match the service of a private contract carrier.
 

 The commission, in making the order in this case, necessarily found that the applicant, Hazelton, was a private contract carrier and not a common carrier, and this court cannot say that the commission erred in this respect.
 

 Lastly, it is claimed that the proposed operation authorized by the amendment of Hazelton’s certificate is inconsistent with the declared policy and purpose of the regulation of transportation by common and contract carriers by motor vehicle, and will not be in the public interest.
 

 The present case presents a situation where the real protestant, the Oolumbus-Cincinnati Trucking Company, a common carrier, operates three trucks between Columbus and Cincinnati. In this operation it serves 42 theatres in Columbus, 19 theatres between Columbus and Cincinnati, the Ohio penitentiary, the London prison farm, three other state institutions, two schools and two hospitals by transportation of motion picture films and accessories. By the amendment of Hazel-ton’s certificate such protestant will lose to him two shippers owning five theatres in Columbus. The record shows that the applicant did not solicit this business but that the shippers sought his service. The protestant, as in case of all common carriers, advertises and solicits business and serves all who apply for its service. The applicant is not a newcomer in the field
 
 *234
 
 but both applicant and protestant, the Columbus-Cincinnati Trucking Company, have been operating in the same territory as competitors under public utility regulation for more than 10 years. Under such circumstances the allowance of the amendment sought by the applicant does not appear to be inconsistent with any declared policy or purpose in the regulation of transportation by common and contract carriers by motor vehicle as contemplated or provided by Section 614-109, General Code.
 

 Is the public interest adversely affected by the amendment of applicant’s certificate? In general,, the public interest sought to be conserved bj^ the provisions of Section 614-83, General Code, as applied to the transportation of freight by motor vehicle, lies
 
 inter alia
 
 in providing safe and efficient transportation equipment; in the maintenance of adequate transportation facilities and service, regularly sustained in any specific territory or area; in providing specialized service essential for handling and delivering special types of merchandise or commodities; in the avoidance of undue and unnecessary travel and traffic congestion on the public highways; and in the maintenance of such reasonable rates and charges for the service as will give the shipper and the public using the commodity shipped the best possible economic advantage consistent with successful operation, taking into consideration in all these respects the natural advance in the quality of service in the field of transportation.
 

 The record shows that both applicant and protestants provide satisfactory equipment for the service given by them and that the .allowance of the amendment will not seriously affect the transportation service as a whole in the territory served by the applicant and protestants. On the other hand, the record shows
 
 *235
 
 that the shippers who have contracted with the applicant have been more or less dissatisfied with the service-of the protestant, the Colnmbus-Cincinnati Trucking-Company, and that its rates for service are approximately one-third higher than those of the applicant.. Furthermore, the applicant, by reason of his training and experience, is able to give these shippers special service not elsewhere available, and the' shippers in question have shown a justifiable preference for such service.
 

 Under such circumstances the commission was justified, other considerations being equal, in affording-these shippers an opportunity to secure transportation upon the most advantageous terms.
 
 Bray
 
 v.
 
 Public Utilities Commission,
 
 139 Ohio St., 409, 40 N. E. (2d), 666.
 

 The order of the commission was not unreasonable- or unlawful, and it is, therefore, affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Bell, Williams and Turner, JJ., concur.