By the Court.
 

 In each case the protestants contend that the applicant, the I. & S. Trucking, Inc., is not ‘ ‘ a proper person to whom to grant a permit, ’ ’ as provided in Section 614-109, G-eneral Code, and that the granting of the application is not consistent with the public interest and the declared policy of the state of Ohio.
 

 The appellants and the appellee cite the cases of
 
 Bray
 
 v.
 
 Public Utilities Commission,
 
 139 Ohio St., 409, 40 N. E. (2d), 666, and
 
 Jones
 
 v.
 
 Public Utilities Comission,
 
 141 Ohio St., 237, 47 N. E. (2d), 780. In the first of these cases this court held:
 

 “1. The primary purpose of legislative enactment
 
 *344
 
 for the regulation of carriers through the Public Utilities Commission is to secure the best transportation service possible, and not to conserve the private interest of any carrier, unless the public interest demands it.
 

 “2.
 
 The regulation of private shipping through private contract carriers should not unnecessarily interfere with the right of private contract, and a shipper should be afforded an opportunity to secure transportation at the most advantageous rates, consistent with the public interest.”
 

 In the second cited case this court held:
 

 “1. Mere proof of an agreement between a contract motor carrier and a shipper for the carriage of materials does not afford a sufficient basis for the granting, by the Public Utilities Commission, of a permit for such carriage over the protest of an existing common carrier who is ready and prepared to meet adequately and satisfactorily the needs of the shipper.
 
 (Bray
 
 v.
 
 Public Utilities Commission,
 
 139 Ohio St., 409, distinguished.)
 

 “2.
 
 In order to entitle a contract motor carrier to amend his permit by adding a shipper to his list, sufficient facts should be presented to enable the commission to find that the granting of his application to amend will comport with the declarations of policy contained in Sections 614-83 and 614-109, General Code, enjoining the regulation of the commercial motor vehicle business in an orderly, efficient and economically sound manner in furtherance of the public interest.
 

 “3. Ordinarily, it is incumbent upon a contract motor carrier who seeks permission to add a shipper to his list, to show a deficiency in the service of a subsisting and protesting common carrier, that there is a demand for the proffered service, and that the filling of
 
 *345
 
 such demand will not conflict with the public interests.”
 

 In each of the instant cases the protestants insist that the applicant does not possess the equipment necessary to render the service involved. This is admitted. However, a study of the records discloses evidence which, if believed, shows that the president of the applicant company is a man who has had 18 years of experience in the various phases of the motor carrier business, that the company possesses capital in the form of cash in a bank, that additional capital is available, that arrangements have been made for the purchase of equipment, and that, if necessary, additional equipment can be leased by the applicant, as is done frequently in the motor transportation business. Hence, there is evidence tending to show that the applicant is “a proper person to whom to grant a permit,” and it is not the function of this court to substitute its judgment for that of the Public Utilities Commission on questions of fact.
 

 The situation is the same with reference to the contention of the protestants that the granting of the applications is not consistent with the public interest and the declared policy of the state.
 

 The matter is well summarized in the following analysis of the evidence by the attorney examiner for the commission in the first case:
 

 “The testimony and records of the commission show that the service, which applicant seeks to render, is specialized and particularly suited to meet shipper’s intrastate transportation needs; that the minimnTn tonnages specified in shipper’s contracts, with existing contract carriers, are inadequate to meet the shipper’s needs; that, in some instances, protesting contract carriers have failed to furnish the shipper with service when requested; that, on occasions, shipper’s loading
 
 *346
 
 schedules have been interrupted due to the nonavailability of protesting carriers’ trucks; and that, to a considerable extent, protesting carriers have been serving the shipper at their convenience.
 

 “The application and formal requirements are in proper order. The applicant is a proper person to whom the commission may grant the authority herein sought. The proposed operation and contract of carriage appears to be in full compliance with the laws of Ohio and rules of the commission, and to be consistent with the declared policy and purpose of the regulation of transportation by common and contract carriers by motor vehicle as provided in Sections 614-83 and 614-109 of the General Code.”
 

 The same reasoning is applicable to the second case.
 

 Hence, under the evidence in these cases the Public Utilities Commission was not in error in granting the applications.
 

 Orders affirmed.
 

 Weygandt, C. J., Hajrt, Zimmerman, Stewart and Turner, JJ., concur.