In re Application of G & B Anderson, Inc. for
Contract Motor Carrier Permit.

[Cite as In re Application of G & B Anderson, Inc. (1988), 38 Ohio St. 3d 96.]

(No. 86-1811—Submitted May 17, 1988—Decided August 3, 1988.)

*Gurney, Miller & Mamone* and *Jeffrey W. Brader,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren, Elizabeth H. Watts* and *James B. Gainer,* for appellee.

*Per Curiam.* The first issue before us is whether the PUCO as a matter of policy must consider the adequacy of existing motor carrier service in determining whether to grant an application for a permit for contract carriage by a private motor carrier.

Anderson contends that the PUCO unlawfully refused to grant the requested permit even though Anderson's application satisfied all the requirements set forth in R.C. 4923.07 for obtaining a contract motor carrier permit. Anderson argues that the PUCO has unlawfully added the requirement that Anderson must show

the deficiency of available service provided by other carriers.

The PUCO argues that R.C. 4923.07 requires it to consider whether the issuance of a contract carrier permit is and will be consistent with the declared policy and purpose of the regulation of transportation embodied in R.C. 4921.03. Because R.C. 4921.03 requires the PUCO to consider and actively promote adequate, economical and efficient transportation service, the consideration of the sufficiency of existing service is within the scope of its discretion. Finally, the PUCO argues that it is required to consider the adequacy of existing service under the holding of this court in *Jones* v. *Pub. Util. Comm.* (1943), 141 Ohio St. 237, 25 O.O. 360, 47 N.E. 2d 780.

R.C. 4923.07 provides in pertinent part:

"Before granting any permit authorizing the operation of a private motor carrier, the public utilities commission shall consider and determine whether the applicant has complied with the law and with the rules and regulations of the commission governing private motor carriers, and whether the operation proposed by the applicant comes within the definition of a private motor carrier, and also whether such proposed operation comes within the definition of a motor transportation company as provided in section 4921.02 of the Revised Code. If the applicant has complied with the law and the rules and regulations of the commission governing private motor carriers, and the commission finds the proposed operation and contract of carriage of the applicant and the other contracting party to be that of a private motor carrier and such contract to be in full compliance with Chapters 4901., 4903., 4905., 4907., 4909., 4921., and 4923. of the Revised Code and the rules of the commission

governing the same, and if the applicant is a proper person to whom to grant a permit, and the granting of such permit, or the approval of the contract as to any change or modification of it is and will be consistent with the declared policy and purpose of the regulation of transportation by common and contract carriers by motor vehicle, as provided in such chapters, then a permit shall be granted; otherwise the application shall be denied, and any such contract, or change or modification of such contract, shall be rejected by the commission. The commission in making its decision shall not be governed solely by the matter of rates. * * *"

R.C. 4921.03 provides as follows:

"The policy of this state is to:

"(A) Regulate transportation by common and contract carriers by motor vehicle in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest;

"(B) Promote adequate, economical, and efficient service by such motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices;

"(C) Improve the relations between, and coordinate transportation by and regulation of, such motor carriers and other carriers;

"(D) Develop and preserve a highway transportation system properly adapted to the needs of commerce and the state;

"(E) Co-operate with the federal government and the several states, and the authorized officials thereof, and with any organization of motor carriers in the administration and enforcement of Chapters 4901., 4903.,

4905., 4907., 4909., 4921., 4923., and 4925. of the Revised Code."

In *Bray* v. *Pub. Util. Comm.* (1942), 139 Ohio St. 409, 22 O.O. 469, 40 N.E. 2d 666, we stated that the adequacy of existing service should be considered in determining whether to issue a contract carrier permit:

"* * * Fundamentally, the regulation of private shipping through private contract carriers should not unnecessarily interfere with the right of private contract. While the Public Utilities Commission is authorized to regulate and control private contract carriers, the shipper by contract carrier should have liberal opportunity to contract for transportation of his goods or merchandise with carriers who offer the best facilities and the most advantageous rates, unless it clearly appears that a contrary policy is necessary to protect the public interest.

"This court has heretofore held that the primary purpose of legislative enactment for the regulation of carriers through the Public Utilities Commission is to secure the best transportation service possible, and not to conserve the private interest of any carrier, unless the public interest demands it.

"In this connection, Judge Robinson said, in the case of *McLain* v. *Public Utilities Commission,* 110 Ohio St., 1, 8, 143 N.E., 381, that 'the Legislature was not concerned so much with the question of who shall reap the emoluments of the transportation service as it was in securing consistently and continuously an adequate transportation service for the convenience of the public.'

"The same member of this court, as the writer of the opinion in the case of *Pennsylvania Rd. Co.* v. *Public Utilities Commission,* 116 Ohio St., 80, 88, 155 N.E., 694, stated:

" 'It has been, and now is, the judgment of this court that the purpose of the motor transportation legislation is to secure to the public necessary and convenient common carrier service over the highways, but not to surrender any of the rights of the public in such highways to persons, partnerships, or corporations operating motor transportation lines; that such certificates are issued for the benefit of the public and not for the benefit of the recipient, are personal in their character, and do not have the attributes of property.'

"In the regulation of common carriers, the Public Utilities Commission may not grant certificates of convenience and necessity to other carriers to occupy the same route or territory already served by a common carrier, provided the latter will, within a reasonable time, furnish service equivalent to that proposed to be furnished by the later applicant for a certificate. Section 614-87, General Code [R.C. 4921.10]; *H. & K. Motor Transportation, Inc.,* v. *Public Utilities Commission,* 135 Ohio St., 145, 19 N.E. (2d), 956. Conversely, in the case of private transportation, a present permit holder should be required to furnish approximately equivalent service before he is entitled by protest to deprive the shipper of a substantially more beneficial contract. Section 614-87*b*, General Code." *Id.* at 413-414, 22 O.O. at 471-472, 40 N.E. 2d at 668.

In *Columbus-Cincinnati Trucking Co.* v. *Pub. Util. Comm.* (1943), 141 Ohio St. 228, 25 O.O. 335, 47 N.E. 2d 623, we affirmed a PUCO decision granting an application for an amended contract carrier permit. There, this court held:

"In general, the public interest sought to be conserved by the provisions of Section 614-83, General Code

[R.C. 4921.03], as applied to the transportation of freight by motor vehicle, lies *inter alia* in providing safe and efficient transportation equipment; in the maintenance of adequate transportation facilities and service, regularly sustained in any specific territory or area; in providing specialized service essential for handling and delivering special types of merchandise or commodities; in the avoidance of undue and unnecessary travel and traffic congestion on the public highways; and in the maintenance of such reasonable rates and charges for the service as will give the shipper and the public using the commodity shipped the best possible economic advantage consistent with successful operation, taking into consideration in all these respects the natural advance in the quality of service in the field of transportation." *Id.* at paragraph two of the syllabus.

Although the PUCO had found the protestants were able to provide adequate service, the PUCO held, and we agreed, that the special circumstances justified the issuance of the amended permit:

"The record shows that both applicant and protestants provide satisfactory equipment for the service given by them and that the allowance of the amendment will not seriously affect the transportation service as a whole in the territory served by the applicant and protestants. On the other hand, the record shows that the shippers who have contracted with the applicant have been more or less dissatisfied with the service of the protestant * * * and that its rates for service are approximately one-third higher than those of the applicant. Furthermore, the applicant, by reason of his training and experience, is able to give these shippers special service not elsewhere available, and the shippers in question have shown a justifiable preference for such service.

"Under such circumstances the commission was justified, other considerations being equal, in affording these shippers an opportunity to secure transportation upon the most advantageous terms. *Bray* v. *Public Utilities Commission,* 139 Ohio St., 409, 40 N.E. (2d), 666." *Id.* at 234-235, 25 O.O. at 337, 47 N.E. 2d at 626.

One week later, we issued our decision in *Jones, supra.* In *Jones,* the PUCO granted a permit to an applicant despite its finding that the existing common carrier service was adequate to satisfy the needs of the shipper, citing *Bray, supra,* as authority for its decision. We reversed the PUCO's decision:

"1. Mere proof of an agreement between a contract motor carrier and a shipper for the carriage of materials does not afford a sufficient basis for the granting, by the Public Utilities Commission, of a permit for such carriage over the protest of an existing common carrier who is ready and prepared to meet adequately and satisfactorily the needs of the shipper. *(Bray* v. *Public Utilities Commission,* 139 Ohio St., 409, distinguished.)

"2. In order to entitle a contract motor carrier to amend his permit by adding a shipper to his list, sufficient facts should be presented to enable the commission to find that the granting of his application to amend will comport with the declarations of policy contained in Sections 614-83 and 614-109, General Code [R.C. 4921.03 and 4923.07], enjoining the regulation of the commercial motor vehicle business in an orderly, efficient and economically sound manner in furtherance of the public interest.

"3. *Ordinarily, it is incumbent upon a contract motor carrier who seeks permission to add a shipper to his*

list, to show a deficiency in the service of a subsisting and protesting common carrier, that there is a demand for the proffered service, and that the filling of such demand will not conflict with the public interest." (Emphasis added). *Id.* at paragraphs one, two and three of the syllabus.

We distinguished *Bray* because of the highly competitive business of the shipper involved in that case. The facts in *Jones* indicated that the shipper's interest was much less compelling:

"* * * [T]here is substantial evidence tending to show that the protestant, an existing common carrier, is in a position to meet the requirements of * * * [the shipper] in a suitable manner with the identical type of equipment possessed by * * * [the applicant]. Evidence is lacking that there is any demand for the proposed service on the part of the contract carrier, or that the granting of its application would supply a need for more adequate, economical and efficient service than that which * * * [the protestant] is ready and able to furnish." *Id.* at 239-240, 25 O.O. at 361, 47 N.E. 2d at 781.

*F.J. Egner & Son, Inc.* v. *Pub. Util. Comm.* (1950), 153 Ohio St. 215, 41 O.O. 240, 91 N.E. 2d 1, affirmed a PUCO decision to grant a contract carrier permit because the record indicated the shipper was in need of additional service:

"Where a wholesale dealer and shipper of petroleum products lacking storage facilities requires in his business prompt unloading of bulk shipments to him and prompt and continuous delivery of his products to his customers at scattered points, and where common carriers by motor vehicle have in former years been unable to render prompt service to such shipper in the delivery of such products, an order of the Public Utilities Commis-

sion granting to a contract carrier by motor vehicle, satisfactory to the shipper and qualified under the statutes, a permit to serve the shipper as an additional customer, is not unreasonable or unlawful." *Id.* at syllabus.

We went on to state that the PUCO had broad authority to implement the policy statement enacted by the General Assembly:

"An examination of Section 614-83, General Code [R.C. 4921.03], * * * discloses that it gives the Public Utilities Commission, in most general terms, the widest discretion to determine, as to any proposed movement in transportation, whether, in the public interest, it possesses inherent advantages and fosters sound economic conditions in such transportation and among carriers." *Id.* at 221, 41 O.O. at 243, 91 N.E. 2d at 4.

In *Wilson* v. *Pub. Util. Comm.* (1950), 153 Ohio St. 342, 41 O.O. 338, 91 N.E. 2d 676, we affirmed the PUCO's approval of a protested permit where the record indicated that:

" '* * * [T]he service, which applicant seeks to render, is specialized and particularly suited to meet shipper's intrastate transportation needs; that the minimum tonnages specified in shipper's contracts, with existing contract carriers, are inadequate to meet the shipper's needs; that, in some instances, protesting contract carriers have failed to furnish the shipper with service when requested; that, on occasions, shipper's loading schedules have been interrupted due to the nonavailability of protesting carriers' trucks; and that, to a considerable extent, protesting carriers have been serving the shipper at their convenience.' " *Id.* at 345-346, 41 O.O. at 339, 91 N.E. 2d at 678.

Finally, in *Bertolini* v. *Pub. Util. Comm.* (1974), 37 Ohio St. 2d 107, 66 O.O. 2d 230, 307 N.E. 2d 907, we af-

firmed the PUCO's approval of an application for an amended permit where the record indicated unusual circumstances such that the principle that there must be a showing of deficiency in the service of a protesting carrier should not be controlling.

Given the long history of the cases decided under R.C. 4923.07, we must reject Anderson's first contention. R.C. 4923.07 requires that the PUCO consider the policy statements set forth in R.C. 4921.03 as well as the specific criteria for issuance of a contract motor carrier permit. R.C. 4921.03 requires the PUCO to consider and to actively promote adequate, economical and efficient service. We have held that the PUCO has broad discretion by virtue of this authority and that the PUCO acts within the scope of that authority by considering deficiency of existing service as a criterion for deciding whether to issue a contract carrier permit. Any change in this area of the law should emanate from the General Assembly and not from this court.

Anderson's second proposition of law argues that the PUCO's conclusion that Anderson failed to show the service offered by the protestants was inadequate or deficient was against the manifest weight of the evidence of record.

R.C. 4903.13 provides, in pertinent part:

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, such court is of the opinion that such order was unlawful or unreasonable."

In *Columbus* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 103, 104, 12 O.O. 3d 112, 113, 388 N.E. 2d 1237, 1238, this court stated:

"Under the 'unlawful or unreason-able' standard specified in R.C. 4903.13, this court will not reverse or modify an opinion and order of the Public Utilities Commission where the record contains sufficient probative evidence to show that the commission's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty." See, also, *Consumers' Counsel* v. *Pub. Util. Comm.* (1981), 67 Ohio St. 2d 153, 21 O.O. 3d 96, 423 N.E. 2d 820; *Ohio Utilities Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 153, 12 O.O. 3d 167, 389 N.E. 2d 483; *General Motors Corp.* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 58, 1 O.O. 3d 35, 351 N.E. 2d 183.

A review of the PUCO's record indicates that there was inconsistent testimony as to the adequacy of the services offered by the protestants. In support of Anderson's application, a representative of Wayne Steel testified as to general complaints regarding the protestants' services. The problems complained of included loads delivered without a protective tarp and loads delivered in an untimely manner. In addition, Wayne Steel expressed dissatisfaction with the rates of one of the protestants.

However, the record also indicates that both protestants are authorized to serve Wayne Steel, both have rendered satisfactory service in the past on the loads tendered to them by or for Wayne Steel, both are located near Wayne Steel's facility, both have adequate equipment to provide service to Wayne Steel, and both have expressed a desire to provide such service.

In view of the conflicting testimony, the PUCO concluded that Anderson had failed to present sufficient evidence showing deficiencies in the services offered by the protestants.

We can not say that the PUCO's conclusion is contrary to the manifest weight of the evidence of record.

Finally, the PUCO argues that this case presents an appropriate opportunity to resolve unanswered questions as to the obligations of parties seeking to challenge PUCO decisions to follow the requirements of R.C. Chapter 4903, and our rules of practice and procedure governing such appeals.

The PUCO reiterates the arguments raised in its earlier motions to dismiss this appeal. The PUCO contends that this case should be dismissed because the notice of appeal was defective (it failed to indicate the PUCO case being appealed and was improperly captioned), because Anderson failed to institute a timely mandamus action to compel the transmission of the PUCO original papers, and because Anderson did not comply with the time deadlines for submission of its brief on the merits. These arguments have been addressed by our earlier rulings and we decline to address them again at this time.

For reason of the foregoing, the order of the commission is affirmed.

*Order affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.