*35
 
 Williams, J.
 

 On February 18, 1944, U. Gr. Hazelton filed with the Public Utilities Commission his application for the addition to his private contract carrier permit, of other contracting parties, namely, W. C. Pullin, owner and operator of Linden theatre, Leo Yassenoff, owner of Cleve theatre, Elizabeth Yassenoff and Milton Yassenoff, owners (as partners) of Beech-wold theatre, and Leo Yassenoff, Elizabeth Yassenoff and Milton Yassenoff, owners (as partners) of Arlington, Southland, Westmont and Boulevard theatres, and for the removal of Ralph E. Reisinger from the list of those covered by Hazelton’s existing permit. The last six theatres are operated by Leo Yassenoff. The Columbus-Cincinnati Trucking Company, which was and for some time had been serving these seven theatres as common carrier of films and supplies, appeared as protestant and the matter was submitted on ' the evidence. Thereupon the commission denied the application of Hazelton with respect to such theatres but allowed it as to the removal of Reisinger from the list.
 

 Hazelton took an appeal to this court.
 

 This cause requires a consideration of the relative rights of a private contract carrier and a common carrier each of whom furnishes transportation of films, parts of motion picture machines, advertising matter and supplies, from Cincinnati to Columbus and intermediate points, and assists to some extent in the local delivery of films and supplies that come into Columbus by express, n The carriers pick up their shipments at {he same distribution points in Cincinnati and deliver the principal portion thereof to theatre operators in Columbus.
 

 The importance of the relative rights and duties of these two classes of carriers is accentuated because it appears from the evidence that there are only two
 
 *36
 
 or three private contract carriers and about five common carriers serving motion picture theatres in Ohio. Though the figures are indefinite it is apparent that the number of carriers engaged in the respective fields is small.
 

 A common carrier holds himself out as ready to serve the public to the limit of his capacity and cannot make a private contract to serve 'a particular shipper for any definite period of time in the future. To do so would interfere with his service to the public generally; but a certificated common carrier has a right to transport films and supplies for theatres even though the work is carried on for the same shippers with more or less regularity. Common carriage by truck upon the public highways has brought its problems and, in furnishing service to the public, one common carrier is equipped to do one kind of hauling and another, a different kind. The protestan!, a common carrier specializing in furnishing transportation of films and supplies for motion picture theatr.es, is not equipped to move household goods, transport stock or engage in other lines which require adapted equipment. Both the applicant and the protestant are equipped to haul films and other supplies required in the operation of motion picture theatres. In furnishing transportation of this nature, the one as a private contract carrier and the other as a common carrier come into competition only to the extent that the applicant, by making contracts with additional shippers, leads them to use his service instead of the service of common carriers.
 

 In
 
 Columbus-Cincinnati Trucking Co.
 
 v.
 
 Public Utilities
 
 Commission, 141 Ohio St., 228, 47 N. E. (2d), 623, decided March 10, 1943, U.
 
 G.
 
 Hazelton, applicant in the instant case, made application for amendment of his contract carrier permit by adding two shippers whose contracts provided for his servicing six additional the
 
 *37
 
 atres. The appellant-protestant in that case is protestant herein. This court affirmed the order of the commission allowing the application.
 

 In the opinion Judge Hart described Hazelton’s service in this language:
 

 “The applicant in this case has always confined his service to the same type of transportation and has not held himself out as accepting transportation from the public generally. It is admitted that this service is of a highly specialized type and limited to a relatively small class of shippers. Furthermore, the record shows that Hazelton, by reason of his knowledge and experience in the theatre business, especially in the booking of films, is able to represent his shippers and to act immediately for them as their agent in selecting substitute films when those previously contracted for or selected are not available, a service which is claimed to be of large value to such theatre owners and operators.
 

 “Hazelton’s service also contemplates and provides for deliveries of films and equipment at the doors of the respective theatres "and not at fixed termini in cities where such theatres are located.”
 

 That description as applied to this case is accurate as far as it goes, but examination of the record herein reveals that the factual situation is somewhat different. Since the trial in the former case both the applicant and the protestan! have improved the service rendered to shippers.
 

 The applicant works by himself without employees or helpers save for transportation assistance from Film Deliveries, Inc., a common carrier, and from one Glenn who maintains a local film service in Columbus with respect to shipments by express. The assistance from Film Deliveries, Inc., is rendered under an agreement with applicant, approved by the com
 
 *38
 
 mission, under which they co-operate in transporting films and supplies, the applicant making the trip between Columbus and Cincinnati on Monday, Tuesday and Wednesday, and Film Deliveries, Inc., the remaining three week days, Sunday trips being alternated. This arrangement was made by direction of the Office of Defense Transportation, so as to conserve fuel, tires and equipment. There is evidence to show that with Hazelton’s supervision the work is kept to his usual standard.
 

 In addition to over-the-road transportation service and procurement of substitute films, the applicant buys mats, booth equipment, carbon and other supplies for his shippers, transports films to and from the railroad station, with Glenn’s assistance, when shipments are made by express, uses theatre programs to assure the delivery of films in due time for showing, furnishes “bicycle service” between two theatres when-films are used in succession by both, procures popcorn for use at a theatre when desired and in fact does what is necessary to afford good service to each of his shippers according to contract and to help him get films and needed supplies in time to keep the theatre in operation.
 

 The protestant, on the other hand, maintains a staff to perform its work and remains ready to serve those applying for transportation service by truck in connection with the operation of motion picture theatres. The improvement in protestant’s operations has been accomplished largely by the inauguration of a program service by which more is done than the transporting of supplies. The protestant receives the programs from the theatre shippers and the information obtained therefrom is copied on the bills of lading and given to the drivers, and, if any film is lacking, they are instructed to investigate. If necessary, the driver con
 
 *39
 
 tacts his employer’s office in Columbus, so that the matter can be straigMened out. Tbe protestant also tries to keep in touch with films that come to Columbus by express, and where cognizant of their arrival notifies Glenn, the local distributor, so that he may see that they reach the theatre to which they are consigned.
 

 In the course of the hearing below the applicant called Pullin and Leo Yassenoff to show that the service received from the protestant had not been satisfactory. Pullin testified that he was not getting proper delivery of films that came by express; that half of the time ‘his frames in the theatre lobby and outside were empty of advertising matter such as cards and posters; and that the applicant will keep him supplied with popcorn out of which he makes more money than out of the theatre itself. A general reference to the other testimony will suffice to make the factual situation sufficiently clear. Leo Yassenoff testified to unsatisfactory experiences he had had with the service of the protestant. Lee Hofheiner, who had used the applicant’s service since on or about April 28, 1943, and formerly used the service of protestant, testified that the service of applicant surpassed his expectations and explained the superior character of the applicant’s service.
 

 The protestant called to the witness stand several theatre owners who regularly shipped with protestant. Those witnesses testified that protestant’s service was entirely satisfactory.
 

 The record does not show that the order of the commission herein is unlawful. In reality no legal question of a serious character was presented to the commission ; but that administrative body did have before it a factual question as to whether it was in the public interest to grant the application. Both private contract carriage and common carriage upon the public
 
 *40
 
 highways can be regulated because such use of the highways is- clothed with a public interest and, though private rights must be safeguarded, the issuance of permits for private contract carriage, as well as certificates of public convenience and necessity, is dependent upon the public interest. The extent to which permits may be granted to private contract carriers without undue interference with common carriage is always'for the determination of the commission in the first instance and, where an issue of fact is presented with respect thereto, and the commission’s order, considered in the light of the evidence, is not "unreasonable, this court will not enter a judgment of reversal upon the ground that the order is not sustained by sufficient evidence.
 

 From all the evidence, conflicting inferences arose as to whether .the public interest required that the application be granted. The commission exercised its discretion and this court cannot say that the order denying the application was unreasonable.
 

 Since the order was neither unlawful nor unreasonable, it is affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Zimmerman, Bell, Turner, Matthias and Hart, JJ., concur.