OPINION
{¶ 1} THIS IS AN ACCELERATED CALENDAR CASE, SUBMITTED TO THIS COURT ON THE RECORD AND THE BRIEFS OF THE PARTIES. APPELLANT, MARLIN E. HOSTETTLER, APPEALS THE JUDGMENT ENTERED BY THE ASHTABULA COUNTY COURT OF COMMON PLEAS. THE TRIAL COURT ENTERED SUMMARY JUDGMENT IN FAVOR OF APPELLEE, COMMUNITY CARE AMBULANCE ("COMMUNITY CARE").
{¶ 2} HOSTETTLER WAS IN THE CLEVELAND CLINIC FOR UNRELATED KNEE SURGERY. FOLLOWING THE SURGERY, HE NEEDED TO GO TO THE WADSWORTH-RITTMAN HOSPITAL FOR REHABILITATION. COMMUNITY CARE WAS CHOSEN TO TRANSPORT HIM TO THE WADSWORTH HOSPITAL. THE RECORD IS UNCLEAR AS TO WHO MADE THE DECISION THAT COMMUNITY CARE WOULD TRANSPORT HOSTETTLER.
{¶ 3} HOSTETTLER WAS STRAPPED TO A GURNEY IN THE BACK OF THE AMBULANCE. THE AMBULANCE ATTENDANTS, CHRIS HARRIS AND TANYA TAYLOR, STATED THAT THE GURNEY WAS PROPERLY SECURED. HOWEVER, HOSTETTLER STATED THAT THE GURNEY WAS MOVING DURING PORTIONS OF THE TRIP.
{¶ 4} THERE WAS A MISCOMMUNICATION REGARDING THE DIRECTIONS TO THE WADSWORTH HOSPITAL. THE AMBULANCE DRIVER EXITED ROUTE 77 ON TO ROUTE 21 NEAR CLEVELAND, RATHER THAN TAKING THE EXIT FOR ROUTE 21 CLOSER TO AKRON. IT WAS DURING THIS SIDETRACK THAT HOSTETTLER CLAIMS HE WAS INJURED. HE STATED THIS PORTION OF THE RIDE WAS VERY BUMPY AND HE WAS THROWN AROUND THE BACK OF THE AMBULANCE. HE REACHED HIS RIGHT ARM OUT AND HELD SOME CABINETS FOR SUPPORT. HIS RIGHT ARM THEN BOUNCED AGAINST THE SIDE OF THE GURNEY, CAUSING AN INJURY TO HIS ULNAR NERVE.
{¶ 5} IN 2002, HOSTETTLER FILED AN ACTION AGAINST COMMUNITY CARE, WHICH WAS ASSIGNED CASE NO. 02 CV 583. THIS ACTION WAS DISMISSED WITHOUT PREJUDICE.
{¶ 6} HOSTETTLER REFILED SUIT AGAINST COMMUNITY CARE, RESULTING IN THE INSTANT ACTION. THE TRIAL COURT ORDERED ALL DISCOVERY MATERIALS FROM CASE NO. 02 CV 583 TRANSFERRED TO THIS CASE. THE RECORD BEFORE THIS COURT DOES NOT CONTAIN THE DISCOVERY REQUESTS. IT DOES CONTAIN THE TRANSCRIBED DEPOSITIONS OF HOSTETTLER, TANYA TAYLOR, AND CHRIS HARRIS. IN ADDITION, IT CONTAINS THE VIDEOTAPED DEPOSITION OF DR. EARL BROWN, WHO TREATED HOSTETTLER FOR HIS INJURY. THIS VIDEOTAPED DEPOSITION WAS FILED AFTER COMMUNITY CARE FILED ITS MOTION FOR SUMMARY JUDGMENT. THERE IS NOTHING IN THE RECORD DEMONSTRATING COMMUNITY CARE OR THE TRIAL COURT OBJECTED TO THE FORM OF THIS RECORDING PURSUANT TO CIV.R. 30(B)(3). THEREFORE, WE WILL CONSIDER THIS DEPOSITION, AS THERE IS NOTHING IN THE RECORD TO INDICATE IT IS NOT PROPERLY PART OF THE RECORD BEFORE US.
{¶ 7} HOSTETTLER RAISES ONE ASSIGNMENT OF ERROR:
{¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF/APPELLANTS [SIC] BY GRANTING THE DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
{¶ 9} PURSUANT TO CIV.R. 56(C), SUMMARY JUDGMENT IS APPROPRIATE WHEN THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.[1] IN ADDITION, IT MUST APPEAR FROM THE EVIDENCE AND STIPULATIONS THAT REASONABLE MINDS CAN COME TO ONLY ONE CONCLUSION, WHICH IS ADVERSE TO THE NON-MOVING PARTY.[2] THE STANDARD OF REVIEW FOR THE GRANTING OF A MOTION FOR SUMMARY JUDGMENT IS DE NOVO.[3]
{¶ 10} HOSTETTLER'S COMPLAINT ALLEGED HIS INJURY WAS DUE TO THE NEGLIGENCE OF COMMUNITY CARE. "IT IS FUNDAMENTAL THAT IN ORDER TO ESTABLISH A CAUSE OF ACTION FOR NEGLIGENCE, THE PLAINTIFF MUST SHOW (1) THE EXISTENCE OF A DUTY, (2) A BREACH OF DUTY, AND (3) AN INJURY PROXIMATELY RESULTING THEREFROM."[4]
{¶ 11} THE INITIAL QUESTION IN THIS MATTER IS WHAT DUTY COMMUNITY CARE OWED TO HOSTETTLER. THE PARTIES AGREE THAT THIS WAS A NON-EMERGENCY RUN. THUS, THE IMMUNITY PROVISIONS GIVEN TO EMERGENCY RESPONSE PERSONNEL UNDER R.C. 4765.49 ARE NOT AT ISSUE IN THIS MATTER. THEREFORE, THE MORE STRINGENT "WILLFUL AND WANTON MISCONDUCT" STANDARD IS NOT APPLICABLE TO THIS CASE.[5]
{¶ 12} THE NEXT INQUIRY IS WHETHER COMMUNITY CARE WAS ACTING AS A PRIVATE CARRIER OR A COMMON CARRIER DURING THE TRIP TO THE WADSWORTH HOSPITAL. "A `COMMON' CARRIER IS ONE WHO UNDERTAKES TO TRANSPORT PERSONS OR PROPERTY FROM PLACE TO PLACE, FOR HIRE, AND HOLDS ITSELF `"OUT TO THE PUBLIC AS READY AND WILLING TO SERVE THE PUBLIC INDIFFERENTLY."'"[6] A "PRIVATE CARRIER IS ONE THAT UNDERTAKES BY SPECIAL AGREEMENT OR CONTRACT TO TRANSPORT A DEFINITE NUMBER OF PERSONS FOR A SPECIFIC UNDERTAKING."[7]
FOR EXAMPLE, A TAXI WOULD GENERALLY BE A COMMON CARRIER, WHILE A LIMOUSINE WOULD GENERALLY BE A PRIVATE CARRIER.[8] COMMON CARRIERS ARE HELD TO THE HIGHEST DEGREE OF CARE.[9] PRIVATE CARRIERS ARE HELD TO A LESS STRINGENT DUTY OF REASONABLE, ORDINARY CARE.[10] THE CONVER COURT DID NOTE THAT WHAT IS "REASONABLE" MAY DEPEND ON THE GIVEN SITUATION.[11]
{¶ 13} THE SIXTH APPELLATE DISTRICT HELD THAT AN AMBULANCE WAS A PRIVATE CARRIER UNDER THE FACTS OF THE CASE BEFORE IT.[12] HOWEVER, THE COURT ACKNOWLEDGED THERE WAS CASE LAW HOLDING AN AMBULANCE IS A COMMON CARRIER,[13] AS WELL AS A PRIVATE CARRIER.[14]
{¶ 14} IT APPEARS COMMUNITY CARE WAS ACTING AS A PRIVATE CARRIER IN THE CASE SUB JUDICE. THE PURPOSE OF THE TRIP WAS TO TRANSPORT HOSTETTLER FROM CLEVELAND TO WADSWORTH. WHILE THERE IS NO EVIDENCE IN THE RECORD OF A CONTRACT TO DO SO, WE WILL ADDRESS THIS APPEAL ASSUMING COMMUNITY CARE WAS ACTING AS A PRIVATE CARRIER.
{¶ 15} HOSTETTLER CLAIMS THE GURNEY WAS NOT PROPERLY SECURED, AND, AS A RESULT, HE WAS EXCESSIVELY TOSSED AROUND IN THE AMBULANCE. THE TRIAL COURT CONCLUDED THAT HOSTETTLER DID NOT SUPPORT HIS CLAIM IN THIS REGARD. WE DISAGREE. IN HIS DEPOSITION, HOSTETTLER STATED "I AM NOT FOR SURE IF IT WAS SECURED TO THE FLOOR OR NOT BECAUSE I COULDN'T SEE." HOSTETTLER WAS NOT IN A POSITION TO SAY WITH CERTAINTY WHETHER THE GURNEY WAS SECURED, BECAUSE HE WAS STRAPPED TO THE GURNEY AND THE LATCHES WERE UNDERNEATH HIM. HE DID SAY THAT THE GURNEY "DIDN'T SEEM TO BE ROLLING TOO FAR." LATER IN THE DEPOSITION, HOSTETTLER STATED THAT HE WAS JERKED FORWARD AND BACKWARD AND SIDE TO SIDE. ALSO, HE STATED HE WAS MOVING SO MUCH THAT HE HAD TO BRACE HIMSELF BY GRABBING ON TO NEARBY CABINETS. TAKEN TOGETHER, THESE STATEMENTS CONSTITUTE SUFFICIENT EVIDENCE TO SURVIVE A MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF WHETHER THE GURNEY WAS IMPROPERLY SECURED. THAT IS, REASONABLE MINDS COULD DIFFER AS TO WHETHER COMMUNITY CARE BREACHED A DUTY OWED TO HOSTETTLER BY FAILING TO ENSURE THE GURNEY WAS SECURE.
{¶ 16} BASED UPON HOSTETTLER'S DEPOSITION, REASONABLE MINDS COULD DIFFER ON THE QUESTION OF WHETHER COMMUNITY CARE BREACHED A DUTY OF ORDINARY CARE BY NOT PROPERLY SECURING THE GURNEY. A GENUINE ISSUE OF MATERIAL FACT EXISTS REGARDING THE ISSUE OF WHETHER THE GURNEY WAS PROPERLY SECURED.
{¶ 17} COMMUNITY CARE SUGGESTS THAT ANY INJURY SUSTAINED BY HOSTETTLER WAS A RESULT OF HIS OWN NEGLIGENCE. PRESUMABLY, IT IS REFERRING TO HOSTETTLER'S STATEMENT THAT HE PLACED HIS ARM OUTSIDE THE CONFINES OF THE GURNEY TO HOLD THE CABINET. HOWEVER, IF A TRIER OF FACT DETERMINED THAT COMMUNITY CARE BREACHED A DUTY OF CARE THAT CAUSED HOSTETTLER TO UNNECESSARILY MOVE AROUND THE AMBULANCE, THE FACT HOSTETTLER GRABBED THE CABINET IN RESPONSE WOULD NOT PRECLUDE LIABILITY.
{¶ 18} THE TRIAL COURT ALSO FOUND HOSTETTLER DID NOT LINK HIS ALLEGED INJURY TO THE AMBULANCE RIDE. HOSTETTLER DID PROVIDE MEDICAL EVIDENCE LINKING THE INJURY TO THE AMBULANCE RIDE. IN HIS DEPOSITION, DR. EARL BROWN STATED THAT IT WAS HIS MEDICAL OPINION THAT HOSTETTLER'S INJURY EXISTED BEFORE THE AMBULANCE RIDE, BUT THE AMBULANCE RIDE AGGRAVATED THE INJURY TO THE POINT HOSTETTLER SOUGHT MEDICAL ATTENTION.
{¶ 19} THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT EXIST IN THIS MATTER. ACCORDINGLY, THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT IN FAVOR OF COMMUNITY CARE.
{¶ 20} HOSTETTLER'S ASSIGNMENT OF ERROR HAS MERIT.
{¶ 21} THE JUDGMENT OF THE TRIAL COURT IS REVERSED. THIS MATTER IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
FORD, P.J., CHRISTLEY, J., CONCUR.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[2] Civ.R. 56(C).
[3] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[4] Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, at ¶ 8, citing Menifee v. Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75, 77.
[5] See, e.g., Donlin v. Rural Metro Ambulance, Inc., 11th Dist. No. 2002-T-0148, 2004-Ohio-1704, at ¶ 13.
[6] Conver v. EKH Co., 10th Dist. No. 02AP-1307, 2003-Ohio-5033, at ¶ 32, quoting Harper v. Agency Rent-A-Car, Inc. (C.A.5, 1990), 905 F.2d 71, quoting Burnett v. Riter (Tex.App. 1925), 276 S.W. 347, 349; 13 Ohio Jurisprudence 3d (1995) 567, Carriers, Section 1.
[7] Id., citing Korner v. Cosgrove (1923), 108 Ohio St. 484; Columbus-Cincinnati Trucking Co. v. Public Utilities Comm. (1943), 141 Ohio St. 228; Spath v. Dillon Ent., Inc. (D.Mon. 1999), 97 F.Supp.2d 1215, 1218.
[8] (Citation omitted.) Conver v. EKH Co., at ¶ 32-35.
[9] Drake v. Antonio Sofo Sons, 6th Dist. No. OT-95-041, 1996 Ohio App. LEXIS 1148, at *7, citing Dietrich v. Community Traction Co. (1964), 1 Ohio St.2d 38, 41.
[10] Conver v. EKH Co., 2003-Ohio-5033, at ¶ 34, citing Harper and Spath, supra, and Long v. Illinois Power Co. (1989),187 Ill. App.3d 614, 629-630.
[11] (Citation omitted.) Id.
[12] Valentine v. Walker Feilbach Funeral Home (Mar. 6, 1981), 6th Dist. No. L-80-054, 1981 Ohio App. LEXIS 11866, at *12.
[13] Id., citing Home Ins. Co. v. Covington (Sp.Ct.Ark. 1973),501 S.W.2d 219.
[14] Id., citing Hernandez v. Castillo (Tex.Civ.App. 1957),303 S.W.2d 508; Pemberton v. Lewis (1952), 235 N.C. 188,69 N.E.2d 512; Holander v. Smith Smith (1950), 10 N.J. Super 82,76 A.2d 697.