[Cite as *Petrasek v. TC3 Operations, Inc.*, 2011-Ohio-1962.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   95519

## MARGARET PETRASEK

PLAINTIFF-APPELLANT

vs.

## TC3 OPERATIONS, INC.

DEFENDANT-APPELLEE

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-653003

**BEFORE:**    Boyle, P.J., Cooney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**    April 21, 2011

**ATTORNEY FOR APPELLANT**

Richard L. Demsey
Richard L. Demsey Co., L.P.A.
U.S. Bank Centre
1350 Euclid Avenue, Suite 1550
Cleveland, Ohio   44115

**ATTORNEYS FOR APPELLEE**

John M. Heffernan
Samuel G. Casolari, Jr.
Beau D. Hollowell
Marshall, Dennehey, Warner, Coleman & Goggin
39 E. Market Street
Suite 301
Akron, Ohio   44308

MARY J. BOYLE, P.J.:

{¶ 1} Plaintiff-appellant, Margaret Petrasek,[1] appeals from the trial court's order granting summary judgment to defendant-appellee, TC3 Operations, Inc. ("TC3").   Finding no merit to the appeal, we affirm.

---

[1]Petrasek passed away during the pendency of the case.   The executor of her estate, Salvatore Grano, was substituted as the plaintiff.   But for purposes of this appeal, we will simply refer to Petrasek as the plaintiff-appellant.

{¶ 2} Petrasek filed a negligence action against TC3 after she was injured on one of its buses in November 2007. TC3 denied the allegations in its answer and moved for summary judgment after discovery was completed.

{¶ 3} The trial court granted TC3's motion, finding that TC3 was a private carrier that owed a duty of ordinary care to Petrasek. But then the trial court determined that TC3 had no duty to actively assist Petrasek up the steps, because steps pose an open and obvious inherent danger. It is from this judgment that Petrasek appeals, raising four assignments of error for our review:

{¶ 4} "[1.] The trial court abused its discretion in granting appellee TC3 Operations' motion for summary judgment when material facts clearly are in dispute and reasonable minds could come to a conclusion in favor of appellant Margaret Petrasek.

{¶ 5} "[2.] The trial court abused its discretion in granting appellee TC3 Operations' motion for summary judgment by finding that appellee did not breach its duty of care owed to appellant.

{¶ 6} "[3.] The trial court abused its discretion in finding that an open and obvious condition existed.

{¶ 7} "[4.] The trial court abused its discretion in failing to strike appellee's defenses of contributory and comparative negligence."

{¶ 8} Petrasek's first three assignments of error raise the same issue, i.e., whether the trial court erred when it granted summary judgment to TC3. Thus, we will address them together.

### Summary Judgment

{¶ 9} This court reviews a decision granting summary judgment on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and, (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 1996-Ohio-326, 672 N.E.2d 654.

### Facts

{¶ 10} Under Civ.R. 56(C), this court must independently determine if any genuine issues of material fact remain such that the trial court erred when it granted summary judgment to TC3. The following facts were established in the depositions of Petrasek, Nancy Fiordalisi, the executive

director of TC3, and Winifred Merles, the person driving the TC3 bus the day Petrasek was injured.

{¶ 11} TC3 (Transportation Consortium Coordinating Committee) was a nonprofit corporation that was created to provide transportation services for independent seniors and disabled persons living in University Heights, Mayfield Heights, and Shaker Heights. In order to use TC3's services, a person had to complete an application with the municipality where he or she lived, be approved by that municipality as a qualifying person, and pay $5 per year to enroll in the program. The person then had to pay only $2 for each ride.

{¶ 12} TC3's buses were specifically designed to transport seniors and disabled persons. They were equipped with three steps and a mechanical lift. The bus on which Petrasek was injured was only six months old. It had a wide entrance with double doors and railings on each side of the steps. The three steps were brightly marked with yellow paint on the edge. At the top of the third step, almost at eye-level when entering the bus, was the warning, "WATCH YOUR STEP." The warning was in red lettering that was enclosed in a white box.

{¶ 13} Petrasek had been using TC3 for approximately ten years. At the time of the accident, Petrasek was 91 years old. About a week before the

accident, she arranged for a TC3 bus to pick her up at her apartment in Mayfield Heights at 9:30 a.m. to take her to her regular hair salon appointment.

{¶ 14} Petrasek testified in her deposition that on the day of her accident, it had snowed that morning. But by the time the bus arrived, it had stopped snowing and there was no snow on the ground. She waited in the lobby of her apartment building for the bus to come. She was wearing a skirt that day and rubber-soled shoes.

{¶ 15} When the TC3 bus arrived, Petrasek walked to it with the help of her walker. Merles, whom had never driven Petrasek before, was driving the bus that day. Merles was standing outside of the bus when Petrasek reached it. Petrasek handed her walker to Merles and proceeded to step onto the first step of the bus. Petrasek did not inform Merles that she needed any assistance. Petrasek placed her right foot onto the first step and then followed with her left foot. At that point, once she had placed both feet on the first step, Petrasek testified that she knew she could not go any further by herself. So she decided to go back down the steps. She did not tell Merles that she was coming back down. It was on the way down, with both hands on the railings, that she scraped her left shin on the step of the van.

{¶ 16} Petrasek stated that Merles did not assist her up the steps on her first try. Merles testified that she did gently place her hand on Petrasek's back as she was attempting

to ascend the stairs the first time. Merles was surprised to hear that Petrasek testified otherwise, and said that Petrasek may have not felt her hand.

{¶ 17} Once Petrasek was back on the ground, she attempted to climb the stairs to the bus a second time, again not asking for any assistance. This time, Petrasek testified that Merles did place her hand on her back. With Merles's help, Petrasek was able to climb the three steps and get on the bus. Once she sat down, she saw that her bone and muscle were exposed, and she was bleeding very badly. She remained on the bus until the ambulance came.

{¶ 18} Petrasek testified that in the past, she usually had the same driver who had always placed a hand on her back to assist her up the steps, but he passed away several months before her accident. She said, "[t]hey knew at that time I needed help in going up." She also expected that Merles would do the same as the other drivers had. She explained that she did not tell Merles that she needed help because she thought TC3 drivers were supposed to help. Petrasek further testified that she did not ask for help on the way down the steps before she got hurt because "on the way down [she] wouldn't need help."

{¶ 19} Merles testified that she had all the required training that is necessary to assist seniors and disabled persons. She was taught that a driver should "be there for [passengers] in their vicinity making sure that they are sure footed getting on the bus." She recognized that Petrasek was "in the ninety-year-old" range and was frail. She therefore knew from her

training and experience that Petrasek may need assistance getting on the bus. Merles testified that she was trained to place a hand gently on a person's back if they needed assistance.

{¶ 20} But Merles stated that as Petrasek began to get on the bus the first time, she stood behind her as she was trained to do and placed a hand gently behind her. When Petrasek came back down the steps, Merles did not realize she was hurt at that time. Merles said that she told Petrasek that she could "let the lift down," but Petrasek just turned away from her and attempted to go up the steps for the second time. Merles said that she placed her hand behind Petrasek again, and this time, Petrasek made it on the bus. After Petrasek sat down on the bus, Merles realized that Petrasek was hurt.

### Common Carrier versus Private Carrier

{¶ 21} The trial court found that TC3 is a private carrier and, thus, owed Petrasek a duty of ordinary care. But Petrasek claims that the evidence suggests that TC3 is a common carrier and should therefore be held to the more stringent duty of care with respect to its passengers. We disagree.

{¶ 22} In *Conver v. EKH Co.*, 10th Dist. No. 02AP-1307, 2003-Ohio-5033, ¶32-34, the court aptly explained the difference between a common and private carrier as follows:

{¶ 23} "A 'common' carrier is one who undertakes to transport persons or property from place to place, for hire, and holds itself "'out to the public as ready and willing to serve

the public indifferently.'"  *Harper v. Agency Rent-A-Car, Inc.* (C.A.5, 1990), 905 F.2d 71,

quoting *Burnett v. Riter* (Tex.App.1925), 276 S.W. 347, 349; 13 Ohio Jurisprudence 3d

(1995) 567, Carriers, Section 1.  The common carrier must hold 'itself ready to serve the

public impartially to the limit of its capacity.'  Id.  For example, taxicabs are common

carriers under Ohio law.  *Korner v. Cosgrove* (1923), 108 Ohio St. 484, 141 N.E. 267.  In

contrast, a private carrier is one that undertakes by special agreement or contract to transport

a definite number of persons for a special undertaking.  Id.; *Columbus-Cincinnati Trucking*

*Co. v. Pub. Util. Comm.* (1943), 141 Ohio St. 228, 47 N.E.2d 623; *Spath v. Dillon*

*Enterprises* (D.Mon.1999), 97 F.Supp.2d 1215, 1218 (defendant was a private carrier where it

contracted to transport individuals on white water rafting trips; this was by nature a special

agreement).[2]  The controlling factor in determining the status of a carrier 'is its public

profession, or holding out, by words or course of conduct, as to the service offered or

performed.  The issue of whether a particular person or instrumentality is a common carrier

---

[2] R.C. 4921.02, dealing with the general powers of the Public Utilities Commission to regulate certain common and private carriers, includes in its definition of common carrier 'every corporation, company *** engag[ed] in the business of transporting persons or property, or the business of providing or furnishing such transportation service, for hire, whether directly or by lease or other arrangement, *for the public in general*.'  (Emphasis added.)  In contrast, R.C. 4923.02 which defines a private motor carrier does not use the language 'for the public in general.

is generally a question of law for the court.'   13 Ohio Jurisprudence 3d (1995) 567, Carriers, Section 1; *Harper*, supra.

{¶ 24} "A common carrier's duty is to 'exercise the highest degree of care for the safety of its passengers consistent with the practical operation of its business.'   *Bodley v. U.S. Air, Inc.* (Dec. 9, 1997), 10th Dist. No. 97APE03-430.   Included in this duty is to provide a reasonably safe place for its passengers to alight and a duty to warn passengers against dangerous agents or conditions known to or reasonably ascertainable by the carrier. *Feldman v. Howard* (1967), 10 Ohio St.2d 189, 192, 226 N.E.2d 564; *James v. Wright* (1991), 76 Ohio App.3d 493, 495, 602 N.E.2d 392.   However, the foregoing duty applies 'only to perils which the passengers [themselves] should not be expected to discover or protect themselves against.'   Id.

{¶ 25} "In contrast, a private carrier's duty is simply that of reasonable ordinary care. *Harper*, *Spath*, supra (recognizing lessened duty of private carriers); *Long v. Illinois Power Co.* (1989), 187 Ill.App.3d 614, 629-630, 135 Ill.Dec. 142, 543 N.E.2d 525 (discussing distinction between private carriers and common carriers and heightened standard of care for common carriers).   What is reasonable may vary depending on the situation.   *Nichols v. TransCor America, Inc.* (June 25, 2002), Tenn.Ct.App. No. 98C-2177."

{¶ 26} Here, TC3 clearly did not hold itself out to the public.   It was created and existed to serve the transportation needs of qualifying seniors and disabled persons in several

municipalities. In order to qualify for the discounted transportation program, one had to fill out an application form with his or her municipality and be approved by the municipality. To use the service, the person then had to schedule a time to be picked up by one of TC3's buses. Accordingly, we find that TC3 was a private carrier owing a duty of ordinary care to Petrasek as its passenger.

## Duty of Ordinary Care

{¶ 27} Petrasek argues that the trial court erred when it applied the open-and- obvious doctrine because that only applies to land and premises liability. We disagree. But while we agree with the trial court that steps have an inherent danger that one must take precautions against, here the question really is whether ordinary care entails actively assisting passengers onto the bus. And we find that it does not. Despite the fact that TC3 was created to provide transportation to seniors and disabled persons, we find that does not mean that the driver had to assist Petrasek onto the bus when she did not request help. The Ohio Supreme Court has held that — even with the higher degree of care owed by a common carrier — that it does not entail actively assisting passengers onto a bus. *Gray v. Youngstown Mun. Ry. Co.* (1954), 160 Ohio St. 511, 517-518, 117 N.E.2d 27. This is especially so when the passenger does not request help. Id.

{¶ 28} In *Gray*, the passenger was elderly and carrying a cane. It was a sunny, clear day. There were no hazards on the steps of the bus. The plaintiff, without requesting

assistance, made it to the first step of a city bus but then lost her balance and fell as she reached for a railing inside the bus.

{¶ 29} Here, Petrasek was elderly and walked with the assistance of a walker. Although it had snowed that morning, the snow had melted by the time the bus arrived. It is undisputed that the steps were free of any snow or any other hazard. And Petrasek made it to the first step before deciding she could not go any further and injured herself stepping backwards off of the bus.

{¶ 30} Petrasek attempts to distinguish *Gray*, claiming that the plaintiff in *Gray* was entering a city bus, but that here, the bus was "specifically designed and equipped to transport elderly or disabled individuals," and that "its primary purpose of operation was to transport seniors and people with disabilities who were living independently in the community." These facts, however, do not raise the level of care that TC3 owed to its passengers. In fact, they actually *lower* the degree to that of ordinary care. And more significantly, in *Gray* — the city bus driver was held to the more stringent duty of care, rather than an ordinary duty of care owed here.

{¶ 31} If the facts in this case were such that a passenger was injured because the driver did not properly assist the passenger onto the bus — such as not adequately securing the passenger's wheelchair to the lift — thereby *causing* the passenger's injury, then we would agree that under those facts, the driver breached the duty of ordinary care. See

*Hostettler v. Community Care Ambulance*, 11th Dist. No. 2004-A-0001, 2004-Ohio-6339 (patient — passenger in an ambulance, which was considered to be a private carrier because it had been specifically hired for a nonemergency job, was injured when paramedic did not properly secure gurney to the ambulance). But we have no such facts here.

{¶ 32} We further find no merit to Petrasek's argument that a question of material fact exists. She claims that because Merles testified that she did place a hand on Petrasek's back the first time, but Petrasek testified that Merles did not, that a question of fact exists as to which happened. Although we agree that this is a question of fact, we find — as the trial court did — that it is not a material fact since we conclude that Merles did not have an affirmative duty to assist Petrasek up the steps.

{¶ 33} Although it is unfortunate that Petrasek was injured so badly, we conclude that it was not caused by any fault of TC3. Accordingly, we find no error on the part of the trial court since TC3 is entitled to judgment as a matter of law.

{¶ 34} Petrasek's first three assignments of error are overruled. Her fourth assignment of error has been rendered moot by our disposition of the first three assigned errors.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., CONCURS;
KENNETH A. ROCCO, J., CONCURS IN JUDGMENT ONLY