[Cite as *Busbee v. Eaton Med. Transport, Inc.*, 2014-Ohio-4701.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| NICHOLAS R. BUSBEE, | : | |
| ADMINISTRATOR, et al. | : | Appellate Case No. 26262 |
| | : | |
| Plaintiff-Appellant | : | Trial Court Case No. 13CV4686 |
| | : | |
| v. | : | |
| | : | |
| EATON MEDICAL TRANSPORT, | : | (Civil Appeal from |
| INC. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of October, 2014.

. . . . . . . . . . .

BRIAN M. GARVINE, Atty. Reg. No. 0068422, 5 East Long Street, Suite 1100, Columbus, Ohio
43215
        Attorney for Plaintiff-Appellant

MELVIN J. DAVIS, Atty. Reg. No. 0079224 and ROBERT V. KISH, Atty. Reg. No. 0075296,
65 E. State Street, 4th Floor, Columbus, Ohio 43215
        Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1}     Nicholas Busbee, acting as administrator of the estate of Juanita Busbee, appeals

from the trial court's entry of summary judgment in favor of appellee Eaton Medical Transport, Inc. (EMT) on her complaint alleging negligence and negligent hiring, retention, and supervision.

{¶ 2}    In his sole assignment of error, Mr. Busbee contends the trial court erred in misapplying Civ.R. 56 to EMT's summary judgment motion.

{¶ 3}    The record reflects that the elderly Ms. Busbee had arranged for an EMT driver to transport her from her apartment to a doctor's appointment on June 4, 2013. A security video shows that EMT driver Michael Palmer arrived at the apartment and entered the breezeway through the exterior door of a double set of doors. Ms. Busbee, who was waiting in a wheelchair in the lobby, pushed a button that automatically opened the interior door. She then propelled herself through the interior doorway as Palmer stayed in the breezeway between the two doors and held the interior door, which already had opened automatically, for Ms. Busbee. As she proceeded outside through the exterior doorway, the exterior door, which also had opened automatically, started to close. Palmer responded by grabbing the exterior door and holding it open for Ms. Busbee, who pushed herself outside. Immediately after exiting the building, Ms. Busbee lost control of her wheelchair, which rolled over a curb and tipped, causing her to fall face-down on the concrete. She sustained injuries that included a broken leg.[1]

{¶ 4}    Following her fall, Ms. Busbee filed a complaint against EMT alleging that Palmer had acted negligently in failing to maintain control of her wheelchair and in failing to transport her safely and securely. The complaint also alleged negligent hiring, retention, and supervision of Palmer. EMT moved for summary judgment, arguing among other things that Ms. Busbee could not prove the existence of a duty, an essential element of a negligence claim. In

---

[1] Ms. Busbee passed away several months later due to an unrelated health problem.

particular, EMT argued that Ms. Busbee had appeared for transport without foot rests attached to her wheelchair despite knowing that EMT policy prohibited transport without them. EMT further argued that Ms. Busbee voluntarily propelled her wheelchair through the set of double doors rather than wait for Palmer to retrieve the required foot rests. EMT asserted that it had no duty to maintain control of Ms. Busbee's wheelchair where Palmer properly never took control in the first place due to the lack of foot rests. Finally, EMT argued that it also was entitled to summary judgment on the negligent hiring, retention, and supervision claim.

{¶ 5}   After reviewing the evidence, the trial court agreed with EMT. Finding no genuine issue of material fact, it sustained EMT's motion.  (Doc. # 37).  The trial court noted that EMT policy precluded pushing or transporting a client without foot rests installed on a wheelchair and that Ms. Busbee was aware of this policy. The trial court also noted Palmer's testimony that he asked Ms. Busbee to wait inside while he retrieved foot rests and that she responded by telling him she wanted to go outside. The trial court found no evidence to contradict Palmer's version of events. It also noted that the security video depicted Ms. Busbee propelling herself outside without Palmer touching her. In short, the trial court found undisputed evidence that EMT policy precluded Palmer from assuming control of a non-compliant wheelchair and that Ms. Busbee had proceeded outside on her own volition. Although Palmer did hold the automatic doors open for Ms. Busbee, the trial court reasoned that this "common courtesy" did not give rise to a duty. The trial court also determined that Palmer's failure to secure Ms. Busbee with an orange safety belt was not actionable. Although EMT policy required the use of such belts when transporting clients, the trial court concluded that Ms. Busbee was not under EMT's care when she fell. Finally, having found no negligence on Palmer's part, the trial

court reasoned that the negligent hiring, retention, and supervision claim necessarily failed as well.

{¶ 6}     We review a grant of summary judgment de novo, which means that "we apply the standards used by the trial court." *Brinkman v. Doughty,* 140 Ohio App.3d 494, 497, 748 N.E.2d 116 (2d Dist.2000). Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 358–59, 604 N.E.2d 138 (1992).

{¶ 7}     On appeal, Mr. Busbee contends the trial court improperly "weighed video evidence when it granted summary judgment." (Appellant's brief at 14). He claims reasonable inferences can be drawn from the video that would support a finding of negligence. According to Mr. Busbee, "reasonable minds could come to more than one conclusion regarding the video depicting the incident that caused Ms. Busbee's injuries." (*Id.* at 15). In particular, he contends the video contradicts Palmer's claim that Ms. Busbee was "motoring out" of the lobby (i.e.,

moving very quickly). Mr. Busbee claims the video demonstrates that his mother was not capable of moving quickly. (*Id*. at 16).

**{¶ 8}** Mr. Busbee also contends the trial court improperly construed EMT's written policies in the company's favor. (*Id*. at 15-16). He argues that EMT's written policies are ambiguous and that the trial court should have resolved the ambiguity in his mother's favor. Specifically, he claims the company's written policy could be interpreted to mean that Palmer became responsible for Ms. Busbee, and owed her a duty, "once she reached the front door." (*Id*. at 16).

**{¶ 9}** Finally, Mr. Busbee argues that the trial court improperly construed Palmer's testimony in a light most favorable to EMT. (*Id*. at 16-17). In particular, he argues that the trial court improperly weighed the evidence and excused Palmer for taking "his eyes off" of Ms. Busbee and for facilitating her exit by holding the door open. (*Id*.). He similarly asserts that the trial court improperly weighed the evidence to find that Palmer was not required to strap Ms. Busbee into her chair because she was not under EMT's control. (*Id*.).

**{¶ 10}** Having reviewed the record, we are unpersuaded that the trial court improperly resolved competing inferences against Ms. Busbee, weighed conflicting evidence, resolved ambiguities in EMT's favor, or otherwise violated Civ.R. 56. The evidence before the trial court consisted of (1) Palmer's deposition, (2) Mr. Busbee's deposition, (3) security video of the incident, and (4) EMT's written policies. Construing that evidence in a light most favorable to Ms. Busbee and drawing all reasonable inferences in her favor, we conclude that the trial court properly found no duty on the part of Palmer as a matter of law.

**{¶ 11}** It is well settled that a plaintiff seeking recovery on a negligence claim "must

show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson,* 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981). The existence of a duty presents an issue of law for a court to decide. *Mussivand v. David*, 45 Ohio St.3d 314, 544 N.E.2d 265 (1989). "When no genuine issue of material fact exists which shows that a duty exists which was breached, the defendant is entitled to summary judgment on its motion." *Simpson v. Concord United Methodist Church*, 2d Dist. Montgomery No. 20382, 2005-Ohio-4534, ¶ 25.

{¶ 12} A company acting as a private carrier and transporting a client for medical treatment owes its client a duty of reasonable, ordinary care.[2] *Hostettler v. Community Care Ambulance*, 11th Dist. Ashtabula No. 2004-A-0001, 2004-Ohio-6339, ¶ 12, citing *Conver v. EKH Co.*, 10th Dist. Franklin No. 02AP-1307, 2003-Ohio-5033, ¶ 34. The trial court correctly noted, however, that such a duty exists only when the client is under the company's care and control, as a private carrier is not an insurer of the client's safety at all times and under all circumstances. *Cf. Conver* at ¶ 36 (finding that a private-carrier limousine driver owed no duty to passengers while they were outside the limousine and not under his control).

{¶ 13} In the present case, EMT's written policy prohibited its employees from transporting or pushing a client without foot rests attached to the client's wheelchair. Specifically, Section 6.1.2 of the policy provided: "All patients transported by wheelchair are required to use foot rests. At no time should a patient be pushed by an EMT employee without foot rests installed on the wheelchair and the client's feet resting on the foot rests." In addition,

---

[2] We agree with the trial court that EMT was a "private carrier," which has been defined as "one that undertakes by special agreement or contract to transport a definite number of persons for a special undertaking." *Petrasek v. TC3 Operations, Inc.*, 8th Dist. Cuyahoga No. 95519, 2011-Ohio-1962, ¶ 23, 26 (holding that a bus company providing transportation for senior citizens and the disabled was a private carrier, not a common carrier).

Section 6.1.1 of EMT's written policy required the use of an orange restraining belt "prior to moving the patient in the wheelchair" and "[w]hile the patient is in the care of the driver[.]" Finally, Section 6.1.3 of EMT's written policy provided: "When picking up and dropping off at a residence, drivers are only responsible for getting the patient to and from the front door of the residence. * * * All patients are to be properly secured with an orange lap belt prior to movement. Leg rests must also be utilized."

{¶ 14} In his deposition, Nicholas Busbee admitted that he and his mother were aware of EMT's policy about the required use of foot rests. (Busbee depo. at 40-41). He also admitted that his mother's wheelchair did not have foot rests attached at the time of her accident. (*Id.*). He did not witness his mother's interaction with Palmer, however, and did not see her accident, as he was upstairs in her apartment at the time. (*Id.* at 31, 32, 38).

{¶ 15} For his part, Palmer testified in his deposition that he noticed the lack of foot rests when he first made contact with Ms. Busbee. (Palmer depo. at 15). According to Palmer, he immediately asked her to stay in the building while he retrieved foot rests from his vehicle. (*Id.* at 15-16, 19). Palmer testified that Ms. Busbee responded by saying "[s]he wanted to go outside and she started going through the door." (*Id.* at 16, 18-19). Palmer stated that he is not allowed to stop a client from doing what they want to do. (*Id.* at 19). He added: "We are not allowed to tell a patient what they can or can't do. It would be like illegal detention. I'm not allowed to lay my hands on a patient and force them to do anything." (*Id.* at 20-21). Palmer noted that all he can do is refuse to transport a non-compliant patient. (*Id.* at 21-22).

{¶ 16} Having reviewed the security video, we agree with the trial court that it depicts Ms. Busbee propelling herself outside through the double doors without Palmer touching either

her or her wheelchair. We also agree with the trial court that nothing in the silent video, or any other evidence, controverts Palmer's testimony that he asked Ms. Busbee to wait inside while he retrieved foot rests. In light of the uncontroverted evidence that Ms. Busbee pushed herself outside in disregard of Palmer's request that she remain in the lobby with her non-compliant wheelchair, the trial court correctly found that "Palmer never took physical control of Ms. Busbee's wheelchair or her person before the accident occurred." (Doc. #37 at 10). That being so, we agree with the trial court that, as a matter of law, EMT "owed no duty to Ms. Busbee when she forged ahead in the absence of the foot rests required by EMT policy[.]" (*Id*. at 12). We see no genuine issue of material fact precluding summary judgment based on the non-existence of a duty.

{¶ 17} Nicholas Busbee's arguments fail to persuade us otherwise. In the proceedings below, he asserted that the security video revealed only "minimal conversation" between Palmer and his mother. He speculated that it was "small talk." But the only *evidence* about what was said came from Palmer, who testified that he asked Ms. Busbee to wait inside while he retrieved foot rests. The record contains no evidence controverting Palmer's testimony.[3] Mr. Busbee also challenges Palmer's description of Ms. Busbee as "motoring out" of the lobby. We agree with the trial court, however, that the speed at which Ms. Busbee moved was not a material issue. (Doc. #37 at 9). We also agree with the trial court's finding that it is immaterial whether Palmer took "his eyes off" of Ms. Busbee as she proceeded outside and that Palmer was not required to strap her in because she had not submitted to his control when she exited the building against his

---

[3] In his reply brief, Mr. Busbee suggests that the video controverts Palmer's testimony because it does not reflect him saying anything to Ms. Busbee. We disagree. The quality of the video is simply too poor for a viewer to determine whether any conversation occurred. All we are left with, then, is Palmer's testimony that he did ask Ms. Busbee to remain inside while he retrieved foot rests.

wishes in a non-compliant wheelchair. (*Id*. at 11-12). We also find no error in the trial court's determination that Palmer's act of holding open the automatic doors did not create a duty. The security video reflects that Ms. Busbee herself opened the doors. Palmer simply held the interior door as she passed through. With regard to the exterior door, the video shows that it started closing on Ms. Busbee before Palmer grabbed it. We agree with the trial court that his act of holding the door did not place Ms. Busbee under his control and create a duty on his part.

{¶ 18}  Finally, we are unpersuaded by Mr. Busbee's argument that Section 6.1.3 of EMT's written policy is ambiguous and that the trial court improperly granted the company summary judgment by construing the ambiguity in its favor. Mr. Busbee contends the provision reasonably can be read as imposing a duty on Palmer because his mother was at the lobby doors. As set forth above, Section 6.1.3 provides: "When picking up and dropping off at a residence, drivers are only responsible for getting the patient to and from the front door of the residence. * * * All patients are to be properly secured with an orange lap belt prior to movement. Leg rests must also be utilized." In our view, this statement necessarily applies to a patient who has submitted to the driver's control after appearing in a wheelchair with leg rests. Ms. Busbee's act of appearing at the front door in a non-compliant wheelchair and proceeding outside against Palmer's wishes demonstrates, as a matter of law, that she *had not* submitted to his control. It would be unreasonable for a trier of fact to interpret Section 6.1.3 as imposing a duty on Palmer under these circumstances.

{¶ 19}  In rejecting Mr. Busbee's argument, the trial court explained:

Based on the inclusion of the word "only" in [Section 6.1.3], however, the Court determines that such provision was intended to <u>limit</u> rather than <u>expand</u> the

scope of EMT's responsibility during patient transport. Such provision then must be interpreted in context with the policy requiring that no patient "be pushed by an EMT employee without foot rests installed on the wheelchair and the client's feet resting on the foot rests." * * * Accordingly, the undisputed evidence supports Defendant's position that it owed no duty to Ms. Busbee at the time of the subject accident, because Defendant's established policy barred Palmer from assuming control of Ms. Busbee's non-compliant wheelchair. As Defendant aptly argues * * *, to hold otherwise would be to make EMT effectively the guarantor of every transported patient's safety once they reach the threshold of their residence, regardless of the patient's own actions in contravention of EMT's safety policies. This Court declines to extend the concept of duty so as to make a private carrier such as EMT "an insurer of passengers' safety." *See Conver*, 2003-Ohio-5033, ¶ 36.

(Doc. #37 at 10-11).

{¶ 20} Upon review, we agree with the foregoing analysis. We see no genuine issue of material fact because Mr. Busbee's proposed interpretation of Section 6.1.3 is not a reasonable one.

{¶ 21} Based on the analysis set forth above, we believe the trial court properly entered summary judgment for EMT on the negligence claim predicated on Palmer's failure to maintain control of Ms. Busbee's wheelchair and failure to transport her safely and securely. That being so, the trial court correctly held that the negligent hiring, retention, and supervision claim failed

as well.[4] Among other things, such a claim requires proof that the offending employee was "incompetent" in some manner. *Clinton v. Faurecia Exhaust Sys., Inc.*, 2d Dist. Miami No. 2012-CA-1, 2012-Ohio-4618, ¶ 68. Here the only alleged incompetence involved Palmer's failure to maintain control of Ms. Busbee's wheelchair and failure to transport her safely and securely. Because EMT was entitled to summary judgment on that underlying negligence claim, Ms. Busbee's negligent hiring, retention, and supervision claim necessarily failed as well.

{¶ 22}   Mr. Busbee's assignment of error is overruled, and the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Brian M. Garvine
Melvin J. Davis
Robert V. Kish
Hon. Mary L. Wiseman

Case Name:   *Nicholas R. Busbee, Administrator, et al. v. Eaton Medical Transport, Inc.*

---

[4] Based on our review of Mr. Busbee's appellate brief, it is not clear that he is challenging the entry of summary judgment on the negligent hiring, retention, and supervision claim. We will address the issue, however, in the interest of completeness.